Mc/

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. PORSC-CV-2012-487

ANDREW B. DOUKAS
WILLIAM B. DOUKAS,

    Plaintiffs

v.

SEA OTTER, LLC,

    Defendant

STATE OF **DECISION AND ORDER**
Cumberland ss Clerk's Office

MAR 3 1 2015

RECEIVED

      This matter came before the court for a bench trial on plaintiffs' claim that they are entitled to a prescriptive easement over defendant's property. The parties stipulated to the extinguishment of one easement over a passageway (Count 1) and the granting of an easement for plaintiffs' stairs onto defendant's property (Count 3). This leaves for the court's resolution the claim of an easement from a passageway from the back of plaintiffs' buildings across defendant's property to Vernon Court and State Street.

      Plaintiffs bear the burden of proving that they have a prescriptive easement. The plaintiffs must prove by a preponderance of the evidence sufficient facts to show the following elements: (1) continuous use for at least twenty years; (2) under a claim of right adverse to the owner; (3) with the owner's knowledge and acquiescence, or with use so open, notorious visible, and uninterrupted that knowledge and acquiescence will be presumed." *Androkites v. White*, 10 A.3d at 681, ¶ 14. The facts are not in serious dispute, but the parties dispute whether the facts establish the elements of a prescriptive easement.

(1) Continuous Use and Occupancy

"Continuous possession and use requires only the kind and degree of occupancy that an average owner would make of the property." *Stickney v. City of Saco*, 2001 ME 69, ¶ 18, 770 A. 2d 592, 601. "[T]he twenty-year prescriptive period may be established by the tacking together of periods of use, but only by those with who the claimant is in privity." *Almeder v. Town of Kennebunkport*, 2014 ME 12, . "Continuous use "occur[s] without interruption. It does not necessarily require daily, weekly, or even monthly use, but instead requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property. The prescriptive period includes any twenty-year span in which adversity and acquiescence have been continuously maintained. *Almeder*, 2014 ME 139, ¶ 22 (citations and quotation marks omitted).

The court makes the following findings of fact by a preponderance of the evidence with regard to continuous use and occupancy. Plaintiffs own abutting parcels of land with improvements in downtown Portland, facing Congress Street between State Street and Vernon Place. Plaintiffs each live on the upper floors of their respective buildings. Restaurants occupy the first floors. William Doukas also has residential tenants on the upper floors. Defendant owns a parcel of land at 201 State Street with a six unit building north of plaintiffs' properties, with frontage on both State Street and Vernon Place. Plaintiffs and defendant's property share a lot line. Plaintiffs claim they have obtained over the last 30 years prescription easements along the southerly boundary of defendant's property to gain access from the rear of their lots to both State Street and Vernon Place.

2

William Doukas's building is located at 675 Congress Street and consists of a first floor restaurant, with four apartments on the second and third floors. The property faces both Congress and State Streets. He has lived on the third floor since 1989. He managed his mother's restaurant beginning in 1982 and then purchased in 1986 both the building and the restaurant business from his mother. William closed the restaurant in 1992 but has leased the restaurant to others over the years.

Since 1982, the restaurant operating in William's building has utilized a strip of land belonging to the defendant and its predecessors in title for deliveries and service access from the kitchen door in the rear of the restaurant to Vernon Place. The back area runs about 50 feet across defendant's property towards Vernon Place, and typically deliveries have used a bit more than the width of a large truck, approximately 16 feet, from the rear wall of the plaintiffs' buildings, to deliver supplies or provide services. The area has also been used for access and egress by owners, managers and employees of the restaurants, as well as for pedestrian access by residential tenants in William's building. According to William, he and his tenants since 1982 have utilized the area along the southern boundary line of defendant's property to gain access to State Street. Others unrelated to plaintiffs have also used this passageway as a short cut between Congress Street and State Street.

In 1989, William had a stairway erected, partially located on defendant's land (resolved by the parties' stipulation as to Count III), for such access, and later did landscaping at the edge of defendant's lot. From 1982 until 2012, tenants on a weekly basis deposited their garbage, trash and recyclables into trash bins. The tenants walk across 201 State Street to get to the trash bins on

3

Vernon Place. With each of his tenants, William explained to the tenants where deliveries came in, and where the trash bins were. Each tenant used the rear door for deliveries of supplies from Vernon Place across 201 State Street and all used the trash bins. Suppliers such as plumbers and maintenance similarly accessed the building from the rear door. Although there are other entry doors, they require access from Congress Street where there is little or no parking for delivery trucks.

Andrew Doukas has lived on the second and third floors of 673 Congress Street since 1983, and has had his law office in the building since 1984. He has used defendant's property for access to State Street by foot since 1982, and for access to Vernon Place by both vehicle and foot since 1982. His mother purchased the property in 1981 and transferred the property to him in 1986. Andrew started using defendant's abutting lot over a period of 11 weeks in the early 80's while he gutted his property. He placed temporary dumpsters on defendant's property. Subsequent deliveries of lumber, plywood, siding, insulation, roofing, sheetrock, appliances and other supplies were delivered across defendant's lot, most commonly from vehicles entering from Vernon Place and backing up across defendant' lot to the rear of 673 Congress. Demolition and construction in the early 80's lasted over a year.

Until the defendant blocked access to her lot in November 2012, Andrew used defendant's lot to load and unload heavy equipment and/or groceries from his personal car and pick up truck, to take deliveries of bulk material (gravel, dirt, sand, bricks, wood), appliances and fuel deliveries and to do vehicle maintenance. He also used the lot for access by foot to both Vernon Place and State Street.

4

Plaintiff's summed up their argument, "the plaintiffs were using the most southerly portion of the defendant's land for such purposes as they needed to gain access to their properties, without deferral to how or what defendant used its property for." Plt.'s Brief. They rest on a showing of a "sufficiently regular, open, notorious and adverse use, which will allow the court to presume knowledge and acquiescence." *Id.* At most, plaintiffs established that the use of the defendant's property was a daily or weekly occurrence for short periods of times by plaintiffs, their tenants and their vendors.

(2) Claim of Right Adverse to Owner

"Using the property "under a claim of right" means that the claimant "must be in possession as the owner, intending to claim the last as [their] own, and may not be in recognition of or subordination to the record title owner." *Jordan v. Shea*, 2002 ME 36, ¶ 23, 791 A. 2d 116, 122. "Adversity is established by evidence that the claimant has used the property (1) in the absence of the owner's express or implied permission, and (2) as the owner would use it, disregarding [the owner's] claims entirely, using it as though he own[s] the property himself (3) such that the use provided the owner[] with adequate notice that the owner's property rights are in jeopardy." *Almeder*, 2014 ME 139, ¶ 20 (quoting *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶¶ 17, 26, 804 A.2d 364 (citations omitted) (quotation marks omitted)). Adversity concerns the actions of the claimant. *Almeder*, 2014 ME 139, ¶ 21.

Plaintiffs testified that there were no problems with cars blocking access because the building was vacant for a long time and then the tenants seemed not to have cars. Although the plaintiffs believed that the defendant's property was largely vacant, in fact it was fully occupied by twelve tenancies at a point just

5

before defendant acquired the property. Before the current owner of 201 State Street purchased it, the property was derelict with broken windows and transients staying in the building.

William asks the court to give him a 15-foot easement to get to the back door. He contends that the owners of 201 State Street never said anything about use of the back entry. William did not think he owned the property and he was not exactly sure of the boundaries. And he was not concerned with using the abutter's property because it had been used that way before. He saw transient people trespassing on defendant's property before defendant acquired the property so he did not see any problem with his use of 201 State Street.

During the 10 years that defendant has owned the property, neither plaintiffs nor their tenants nor their vendors parked on defendant's property for appreciable periods of time and did not interfere with the defendant or her tenants' use of the property. Plaintiffs' admitted that their use of defendant's parking lot was subordinate to defendant's use.

The only vehicle access to the plaintiffs' buildings is from defendant's lot. Andrew's common practice was to bring his groceries through the back and then move and park his car elsewhere. Sometimes he used the back parking lot to do maintenance on his car. Many times he crossed defendant's property to get to his car and he was never told he could not do this. Andrew admitted that he understood that this was not his property and it also appeared to not be actively used by the owner. There were times when people lived at 201 State Street, then there was no one there, then when defendant acquired 201 State Street, there was construction and then tenants.

A carpenter who does property management for William use to park in the rear lot, but if he was there for more than one-half hour he would move to a different spot. He testified that there is never any parking on Congress Street and it was very difficult to park on State Street. And, it is even more difficult now that the fence is up. A plumber who worked for William and the various restaurants from time to time parked in the back lot when working there. He did so for ease of getting to his truck because he was unloading and loading tools and supplies. He worked there from 1988 for four months renovating the apartments on the 3ʳᵈ and 4ᵗʰ floors. Then he worked again during 1992-93 until most of building was renovated. Although he stopped quite a while ago, from time to time he still does work for William. But he would not use the rear door to get to the upper floors. For the current restaurant owners, although it is possible, it is inconvenient to access the restaurant through the front door on Congress Street. It would be more convenient to bring a truck up the alley and the delivery through the back door. For the four tenants who live on the second floor they all have access to their apartments through the front door on Congress Street. They also have access to the back stairway because the City code requires 2 entrances and exits. The back stair lands on Congress Street side of fence in the alley and is covered by the stipulation to resolve Court III.

Since plaintiffs base their claim on a presumptive easement they are not concerned about the sewer lien interference with their title because title is not a component for a claim of presumptive easement. This is also true for the time periods that Andrew lost possession of his property to the City because of tax liens. Consequently, plaintiffs cannot establish proof of a claim by right. At best, their use of a portion of 201 State Street is permissive and customary.

7

The court concludes that the plaintiffs have not shown by a preponderance of the evidence that they used defendant's property maintaining claim of right adverse to the owner of defendant's property. Plaintiffs found it convenient before defendant improved 201 State Street to use defendant's property to access their buildings since defendant's property provided the only access to the rear of plaintiffs' buildings and appeared for some time to have an absentee landlord.

(3) Knowledge and Acquiescence

"Acquiescence differs from adversity in that adversity regards the actions of the claimant, whereas acquiescence looks to the actions of the owner." *Almeder*, 2014 ME 139, ¶ 21. The defendant bought the property between 2002 and 2004. When she bought it there were a number of legal apartments and three illegal apartments. She converted the property into high-end condominiums and had to submit her plan for City approval. The approved site plan requires 6 parking spaces and green space but because of this lawsuit this project is not completed. There are still 8 parking spaces because the green space has not yet been installed.

Defendant was aware of a lot of trucks, some going to plaintiffs' restaurant and others who needed a convenient space to access businesses in Longfellow Square. The area she has closed off with fences is part of her rehabilitation of 201 State Street and conversion into condominiums. Defendant put the fences up after a drunken man passed out on the steps of her project. In the earlier years of her ownership, she received lots of calls from police with reports of break ins and broken windows. The fences were put up to create an attractive enclosure for the condominium project and to create security, to keep

drunks from congregating in that area. The defendant also has an ownership interest in another restaurant in the same area and that restaurant is able to cope with limited use of Congress Street for access.

For all of the above reason, the court concludes that the plaintiffs have not shown by a preponderance of the evidence that they used defendant's property maintaining a claim of right adverse to the owner of defendant's property and actual adversity and notice to the defendant during the relevant period.

The entry is:

Judgment on Court II for the Defendant.

Date: 5|31|15

Joyce A. Wheeler
Justice, Superior Court


Plaintiffs-Andrew Doukas Esq and William
    Doukas - Pro Se

Defendant-James Cloutier Esq

9