MAINE SUPREME JUDICIAL COURT                                      Reporter of Decisions
Decision:     2014 ME 139
Docket:       Yor-12-599
Argued:       November 19, 2013
Decided:      February 4, 2014
Reargued:     April 9, 2014
Reissued:     December 9, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.[*]

ROBERT F. ALMEDER et al.

v.

TOWN OF KENNEBUNKPORT et al.

GORMAN, J.

[¶1]  Robert F. Almeder and twenty-eight other owners of property fronting Goose Rocks Beach in Kennebunkport (the Beachfront Owners) appeal from a decision of the Superior Court (York County, *Brennan, J.*) awarding the public a recreational easement over both the intertidal and dry sand portions of the Beach. The Beachfront Owners argue that the court erred in (1) permitting the State and neighboring landowners to intervene, (2) awarding a prescriptive easement and an easement by custom to the public users of the beach, and (3) determining that the public had rights concerning the intertidal zone of the Beach pursuant to the public

---

[*]  Levy, J., sat at the oral argument, participated in the opinion, sat at the reargument, and participated in the initial conference after reargument, but resigned before this opinion was adopted.

trust doctrine. The State cross-appeals,[1] arguing that the court erred in limiting the activities allowed in the intertidal zone pursuant to the public trust doctrine. We vacate the judgment and remand a portion of the case to the Superior Court.

## I. BACKGROUND

[¶2] Goose Rocks Beach is a two-mile stretch of beach located in Kennebunkport.[2] There are 110 parcels of property directly abutting the Beach owned by ninety-five separate owners. Nine of the lots are owned by either the Town or the Kennebunkport Conservation Trust. The Beach has five public access points and 173 public parking spaces on two abutting roads.

[¶3] In October of 2009, the Beachfront Owners[3] initiated proceedings in the Superior Court against the Town and all others who claimed any title or right to use the Beach. Each Beachfront Owner sought (1) a declaratory judgment

---

[1] The Town also cross-appealed, but does not argue that any portion of the court's judgment was error. The trial court permitted roughly 200 owners of nearby properties to intervene, as well as the Surfrider Foundation. The Conservation Law Foundation, the Maine Snowmobile Association, and the Maine Forest Products Council also have filed amicus curiae briefs.

[2] The law treats a beach as having three discrete areas: "the submerged land below the mean low-water mark," *McGarvey v. Whittredge*, 2011 ME 97, ¶ 13, 28 A.3d 620; the intertidal zone (wet sand), consisting of the shore and flats between the mean low-water mark and the mean high-water mark, to the extent that distance does not exceed one hundred rods, *Flaherty v. Muther*, 2011 ME 32, ¶ 1 n.2, 17 A.3d 640; and the upland (dry sand) above the mean high-water mark, *id.* ¶ 2 n.3. Unless otherwise noted, "the Beach" refers to the intertidal zone and the upland.

[3] The number of Beachfront Owners has varied throughout the litigation. After determining that all ninety-five owners of beachfront parcels were necessary parties to the litigation, the court ordered service of the complaint on each pursuant to M.R. Civ. P. 19(a). Although a few joined in the complaint, many took no position on the matter. Others have voluntarily dismissed their complaints or conveyed their property to others in the meantime.

affirming his or her ownership and exclusive right to use that portion of the Beach abutting his or her parcel down to the mean low-water mark, "subject only to the public rights of usage in the Intertidal Property established by the Colonial Ordinance of 1647," and (2) to quiet title to his or her claimed Beach property.

[¶4]   The Town asserted nine counterclaims alleging its ownership of the Beach and the public's right to use the Beach.   Approximately 200 owners of property located in the Town's Goose Rocks Zone, but not directly on the Beach (the Backlot Owners), also intervened and filed counterclaims.[4]   Finally, the State intervened as a defendant to represent the public's interest in its use of the intertidal zone pursuant to the public trust doctrine, but did not assert any of its own causes of action.   In all, the various parties asserted some sixty-three causes of action; by the time of trial, only sixteen of these remained for decision.[5]

[¶5]   With the agreement of the parties, the court scheduled a bifurcated trial to first address the use-related claims that were still pending, and saved for the second portion of trial those claims related to title.   In August and September of 2012, the court heard the first portion of the matter in a two-week trial during

---

[4]   The law firm of Taylor, McCormack & Frame, LLC, represents the vast majority of the Backlot Owners; these parties are referred to in the record as the "TMF Defendants."   Alexander M. and Judith A. Lachiatto and Richard J. and Margarete K.M. Driver are Backlot Owners not represented by Taylor, McCormack & Frame.

[5]   The remaining forty-seven claims were dismissed, withdrawn, or disposed of by summary judgment. None of those decisions is challenged in this appeal.

4

which sixty-six witnesses testified. The causes of action before the court in that first portion of the bifurcated trial were (1) the Town's and the Backlot Owners' claims alleging prescriptive easements over the entirety of the Beach, and (2) the Town's claim for an easement by custom.[6] Despite its failure to assert a counterclaim or cross-claim, the State was permitted to argue regarding the application of the public trust doctrine to the intertidal zone of the Beach.

[¶6] By partial judgment dated October 16, 2012, the court made the following findings of fact.[7] In colonial times, the Beach was used as a public highway as well as for harvesting seaweed, clamming, driving livestock, and providing access to marshland for cutting hay. Starting in the 1800s, the Beach became a popular tourist destination, resulting in the construction of hotels and guesthouses, a bowling alley, a casino, shops, restaurants, and "auto-trailer" camps on the land abutting the Beach. The court found that from the late 1800s through the 1940s, the Beach was used "for a full range of recreational activities, including walking, swimming, sun bathing and a variety of beach related games." After a fire swept through the area in 1947, the rebuilt properties around the Beach had a

---

[6] Reserved for the second portion of trial were the Beachfront Owners' claims for a declaratory judgment and to quiet title; the Town's claims for fee simple ownership, adverse possession, acquiescence, dedication and acceptance, deeded easement, and implied/quasi-easement; and some of the Backlot Owners' claims for easement by estoppel.

[7] As the trial court noted, it did "not undertake to summarize each witness's testimony."

more residential and less commercial character, but the Beach was still used for recreational activities.

[¶7]  The Town began imposing regulations on the use of the Beach in the 1700s, including some regarding livestock, clamming, and seaweed harvesting. More recently, the Town has established regulations concerning dogs and fires on the Beach and parking near the Beach.  From the 1950s to the 1990s, the Town provided lifeguard service for the Beach; the lifeguard stand was located near the "public" part of the Beach, but the lifeguards patrolled the full length of the Beach and gave swimming lessons to the general public.  In 1994, the Town discontinued the lifeguard service and "replaced it with a police officer dedicated to serve the Beach."  The Town has also used its funds to promote the Beach to tourists and to provide bus service to and supervision for children at the Beach during the summers.  The court found that "from the early 1900[s] the Town has consistently encouraged and facilitated the use of the Beach by the general public."

[¶8]  The court found that "while people tended to use the area in front of their own properties or near a public access point most frequently, nearly all used the Beach 'from river to river' frequently depending on what activity was being undertaken at the time."  Although the use of the Beach is most intense in the areas of the Beach owned by the Town, people regularly use the full length of the Beach year-round to walk, play in tidal pools, collect sand dollars, play softball, ride

6

horses, and cross-country ski, and to access the water for boating, water-skiing, windsurfing, kayaking, snorkeling, rafting, paddleboarding, and tubing.

[¶9] Beachgoers have not asked the Beachfront Owners for permission to use the Beach for these general recreational purposes because they felt they had a right to use the Beach for such purposes. They have asked permission from the relevant Beachfront Owners for activities beyond "ordinary beach type recreational uses," however, such as storing boats on the dry sand or hosting a party or wedding on the Beach.

[¶10] The Beachfront Owners have requested that beachgoers leave the property when beachgoers were drinking alcohol or engaging in loud, disruptive, or potentially dangerous activities. Rarely has a Beachfront Owner otherwise ever requested that a beachgoer "move along." Testimony indicated that it would be impractical to ask beachgoers engaged in ordinary recreational activity to leave.

[¶11] Although several Beachfront Owners have, in recent years, posted 'no trespassing' signs around their properties, the signs were intended to keep people off of the Beachfront Owners' landscaped property and private access ways rather than any portion of the sand itself. As to the wet or dry sand portions of the Beach, the court found that beachgoers would have ignored the signs and continued to use the Beach as they always had. Many of the Beachfront Owners also have offered

their homes for rent, and have not given their tenants any instructions that limit their use of the Beach.

[¶12]   On these facts, the court determined that the Town, the Backlot Owners, and the public enjoy a public prescriptive easement as well as an easement by custom to engage in general recreational activities on both the wet and dry sand portions of the entire Beach.[8]   The court also found that the State had established, pursuant to the public trust doctrine, that the public's right to fish, fowl, and navigate includes the right to cross the intertidal zone of the Beach to engage in all "ocean-based" activities, which it defined as such "waterborne activities as jet-skiing; water-skiing; knee-boarding or tubing; surfing; windsurfing; boogie boarding; rafting; tubing; paddleboarding; and snorkeling," but not including "swimming, bathing or wading; walking; picnicking or playing games."   The court denied the Beachfront Owners' motion for additional findings of fact and conclusions of law.  *See* M.R. Civ. P. 52(b).

[¶13]   The court granted the Town's, the TMF Defendants', and the State's motions for entry of a final judgment pursuant to M.R. Civ. P. 54(b)(1) as to

---

[8]   Meanwhile, the Town, some of the Backlot Owners, and some of the Beachfront Owners reached a settlement in which they agreed that the joining Beachfront Owners held title to those portions of the Beach described in their deeds, but granted to the Backlot Owners and the public a right to use their portions of the Beach with certain restrictions, in exchange for dismissal of the Town's and Backlot Owners' prescriptive easement claims against those Beachfront Owners.

8

prescriptive easement, easement by custom, and the public trust doctrine.[9] The Beachfront Owners timely appealed pursuant to 14 M.R.S. § 1851 (2013) and M.R. App. P. 2. The Town and the State cross-appealed. *See* M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶14] The Beachfront Owners challenge the Superior Court's award to the Town, the public, and the Backlot Owners of an easement over both the wet and dry sand portions of the entirety of Goose Rocks Beach pursuant to theories of prescription and custom, and its articulation of the extent of the public trust rights in the intertidal zone. In its cross-appeal, the State contends that the court erred in limiting the scope of the activities allowed in the intertidal zone. We first address two threshold issues—the finality of the judgment and standing.

A. Threshold Issues

1. Entry of a Final Judgment

[¶15] The first preliminary issue is whether the court erred in entering a final judgment pursuant to M.R. Civ. P. 54(b).[10] In deciding whether to reach the merits of an appeal, we consider, as the Superior Court did, such factors as

---

[9] The Beachfront Owners objected to the entry of a final judgment in the trial court, but they had withdrawn that objection by the time of oral argument in this Court.

[10] Maine Rule of Civil Procedure 54(b)(1) provides, in pertinent part:

- The relationship of the adjudicated and unadjudicated claims;

- The possibility that the need for review may be mooted by future developments in the trial court;

- The chance that the same issues will be presented to us more than once;

- The extent to which an immediate appeal might expedite or delay the trial court's work;

- The nature of the legal questions presented as close or clear;

- The economic effects of both the appeal and any delays on all of the parties, including the parties to the appeal and other parties awaiting adjudication of unresolved claims; and

- Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like.

*Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 13, 36 A.3d 861 (alteration omitted) (quotation marks omitted). With particular emphasis on the first, fourth, and sixth factors listed above, we note the extraordinary circumstances of this case, which already has cost the parties and the taxpayers substantial time and resources. We discern no abuse of discretion in the court's entry of a final judgment as to the parties' use claims pursuant to Rule 54(b). *See Marquis*, 2011 ME 128, ¶¶ 12-13, 36 A.3d 861. Therefore, we address the court's decision on its merits.

---

Except as otherwise provided in paragraph (2) of this subdivision and in Rule 80(d), when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

2. Intervention of the Backlot Owners

[¶16] The second threshold issue is the standing of the Backlot Owners, whom the Beachfront Owners contend were not proper parties to the litigation. The Backlot Owners moved to intervene pursuant to M.R. Civ. P. 24, which allows a party to intervene as of right if provided by statute or if that party

> claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

M.R. Civ. P. 24(a). A party may intervene by permission if the "applicant's claim or defense and the main action have a question of law or fact in common." M.R. Civ. P. 24(b). The court determined that the Backlot Owners had standing in the litigation based on

> their location [in relation] to the beach, their treatment of the beach as if it were their own, their ability to access the beach without permits (parking), their ability to rent their homes based on their proximity to the beach, their inflated tax assessed values based on their location and their ability to access the beach through various public and private rights of way.

(Alterations omitted) (quotation marks omitted). We review the court's decision to allow the Backlot Owners to intervene for errors of law or an abuse of discretion. *State v. MaineHealth*, 2011 ME 115, ¶ 7, 31 A.3d 911.

[¶17] Our review of the record indicates that, ultimately, the Backlot Owners' motion to intervene was erroneously analyzed as a matter of general

standing rather than as a matter of standing to intervene pursuant to Rule 24. When their motion is properly considered through the lens of Rule 24, the Backlot Owners did not, as a matter of law, meet the requirements of Rule 24, either by right or by permission. To the extent any Backlot Owner sought a private easement over any Beachfront Owner's property,[11] none sufficiently pleaded or proved the elements necessary to obtain an easement as to any specific parcel of Beach property, as we will discuss in further detail below. To the extent that the Backlot Owners instead sought to establish a public easement to the Beach, those rights were identical to those claimed by the public, and the Town represented those public rights. Notwithstanding their proximity to the Beach, the Backlot Owners did not demonstrate any interest in the Beach itself—as opposed to any paths leading to the Beach in which they might claim an interest—beyond that of any member of the public who has a history of using the Beach or, even more broadly, of any person who happens to live near a scenic location. With regard to this aspect of the litigation, the addition of the Backlot Owners served only to add to its expense and delay. We therefore conclude that the Backlot Owners are not proper parties to the litigation, and we vacate the court's decision permitting the Backlot Owners to intervene, as well as any relief ultimately granted to the Backlot Owners.

---

[11] The Backlot Owners asserted claims of easement by prescription, by estoppel, and by implication.

12

## B.    Public Easements

[¶18]  The viability of a type of easement and the evidence required to establish that easement are matters of law we review de novo.  *See Androkites v. White*, 2010 ME 133, ¶ 12, 10 A.3d 677.  We review the facts supporting the court's conclusions for clear error, and will uphold the court's findings unless "there is no credible evidence on the record to support them or the court bases its findings of fact upon a clear misapprehension of the meaning of the evidence." *Baptist Youth Camp v. Robinson*, 1998 ME 175, ¶ 7, 714 A.2d 809 (alterations omitted) (quotation marks omitted).

### 1.    Easement by Prescription

[¶19]  "An easement is a right of use over the property of another" that may be created by any one of several means.  *Stickney v. City of Saco*, 2001 ME 69, ¶ 31, 770 A.2d 592.  Among them, 14 M.R.S. § 812 (2013) provides for the creation of an easement by prescription: "No person, class of persons or the public shall acquire a right-of-way or other easement through, in, upon or over the land of another by the adverse use and enjoyment thereof, unless it is continued uninterruptedly for 20 years."  Pursuant to section 812 and the "extensive body of case law" interpreting and applying it, it is the burden of the party claiming a prescriptive easement to prove, by a preponderance of the evidence, three

categories of facts regarding his use of another's property. *Androkites*, 2010 ME 133, ¶¶ 13-14, 10 A.3d 677.

[¶20] First, the claimant's use must be "under a claim of right adverse to the owner." *Id.* ¶ 14. Adversity is established by evidence that the claimant has used the property (1) in the absence of the owner's express or implied permission, and (2) "as the owner would use it, disregarding [the owner's] claims entirely, using it as though he own[s] the property himself" (3) such that the use "provided the owner[] with adequate notice that the owner's property rights are in jeopardy."[12] *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶¶ 17, 26, 804 A.2d 364 (alterations omitted) (quotation marks omitted). Proof of "a heated controversy or a manifestation of ill will" is not required. *Id.* ¶ 26 (quotation marks omitted).

[¶21] Second, the claimant's use must be with the owner's knowledge and acquiescence. *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677. Acquiescence is "consent by silence." *Dartnell v. Bidwell*, 115 Me. 227, 230, 98 A. 743 (1916); *see Stickney*, 2001 ME 69, ¶ 23, 770 A.2d 592 (holding that acquiescence refers to "passive assent or submission to the use, as distinguished from the granting of a

---

[12] At one time, adversity also required proof of the claimant's intent to unseat the owner's claim to the property. *See, e.g.*, *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶¶ 17, 26, 804 A.2d 364; *Jordan v. Shea*, 2002 ME 36, ¶ 23, 791 A.2d 116. We have since noted the elimination of the subjective intent requirement for prescription claims in order to parallel the absence of such a requirement for the adversity element in adverse possession claims. *See Androkites v. White*, 2010 ME 133, ¶ 16 n.7, 10 A.3d 133 (citing *Dombkowski v. Ferland*, 2006 ME 24, ¶¶ 23 n.6, 24, 893 A.2d 599).

license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it" (quotation marks omitted)). Knowledge and acquiescence may be established either by proof of actual knowledge and acquiescence, or by proof of a use "so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed."[13] *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677; *see Taylor v. Nutter*, 687 A.2d 632, 635 (Me. 1996). Evidence of acquiescence may be in the form of physical acts or statements, and nonacquiescence "may be evidenced by verbal protest alone."[14] *Noyes v. Levine*, 130 Me. 151, 152, 154 A. 78 (1931); *see Dowley v. Morency*, 1999 ME 137, ¶ 24, 737 A.2d 1061; *Dartnell*, 115 Me. at 231, 98 A. 743 ("[D]enials and remonstrances, on or off the land are sufficient to rebut acquiescence, and work an interruption."); *Rollins v. Blackden*, 112 Me. 459, 467, 92 A. 521 (1914) ("[O]rdinarily the law does not require one to use force to assert his rights." (quotation marks omitted)). Acquiescence differs from adversity in that adversity regards the actions of the claimant, whereas acquiescence looks to

---

[13] The court found actual, not presumed, acquiescence, and thus the elements of presumed acquiescence are not at issue in this appeal.

[14] As a statutory matter, a finding of acquiescence is precluded when the owner posts a notice of his nonacquiescence in a conspicuous place on his property for six successive days, records such a notice in the registry of deeds, or serves a potential claimant with the notice in the manner of civil process. 14 M.R.S. § 812 (2013); *see Dartnell v. Bidwell*, 115 Me. 227, 232, 98 A. 743 (1916).

the actions of the owner. *See* 4 Richard R. Powell, *Powell on Real Property* § 34.10[3][a] & n.38, at 34-102 (Michael Allan Wolf ed., 2005).

[¶22]  Third, a claimant must establish his continuous use of the property for at least twenty years. 14 M.R.S. § 812; *Androkites*, 2010 ME 133, ¶ 14, 10 A.3d 677. Continuous use "occur[s] without interruption." *Stickney*, 2001 ME 69, ¶ 18, 770 A.2d 592 (quotation marks omitted). It does not necessarily require daily, weekly, or even monthly use, but instead "requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property." *Id*.; *see also Androkites*, 2010 ME 133, ¶ 15 n.5, 10 A.3d 677. The prescriptive period includes any twenty-year span in which adversity and acquiescence have been continuously maintained. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 39, 760 A.2d 232.

[¶23]  Central to all three of these elements regarding the nature and frequency of use is the claimant's burden to establish the location of the use. More particularly, in order to obtain a prescriptive easement over a parcel of property, the claimant must demonstrate the requisite use *of that parcel*, as it is in the very nature of an equitable claim to property that persons may "typically only acquire that property which they actually possessed." *D'Angelo v. McNutt*, 2005 ME 31, ¶ 9, 868 A.2d 239; *see McGeechan v. Sherwood*, 2000 ME 188, ¶ 54, 760 A.2d 1068 (agreeing that the adverse use of some portion of property does not equate to

adverse use of the entire property in the absence of evidence to that effect). This requirement is noteworthy when, as here, the use alleged is of a stretch of property comprising multiple parcels with multiple potential owners. *See, e.g., Opinion of the Justices*, 649 A.2d 604, 610 (N.H. 1994) ("[P]rescriptive easements, by their nature, can be utilized only on a tract-by-tract basis . . . ." (quotation marks omitted)); *State ex rel. Thornton v. Hay*, 462 P.2d 671, 676 (Or. 1969) ("Strictly construed, prescription applies only to the specific tract of land before the court, and doubtful prescription cases could fill the courts for years with tract-by-tract litigation."); 4 Richard R. Powell, *Powell on Real Property* § 34.11[6], at 34-129.

[¶24] In the instant matter, our review of the record demonstrates a lack of specific analysis or findings as to each of the Beachfront Owners' parcels at issue. This lack of analysis or findings of use specific to each Beachfront Owner's parcel requires that we vacate the judgment.[15]

[¶25] Before, during, and after the trial, the Town steadfastly opposed the Beachfront Owners' argument that a determination of any easement by prescription had to involve parcel-by-parcel evidence and findings. The Town also

---

[15] Our decision in *D'Angelo v. McNutt*, 2005 ME 31, ¶¶ 8-9, 868 A.2d 239—in which we held, in the absence of a motion for findings of fact and conclusions of law pursuant to M.R. Civ. P. 52, that the court could infer from the evidence that a party claiming property by adverse possession used and possessed the entire parcel at issue—is distinguishable on this point. In that case, the property claimed was all owned by one record owner. *D'Angelo*, 2005 ME 31, ¶ 1, 868 A.2d 239. In addition, a review of the trial court decision reveals that it followed a process that would more than have satisfied the parcel-by-parcel analysis we require as to any public recreational easement on Goose Rocks Beach. *D'Angelo v. McNutt*, CUMSC-CV-2001-678 (Me. Super. Ct., Cum. Cty., Apr. 1, 2004) (Humphrey, D.C.J.).

was successful in convincing the trial court that the claimed public prescriptive easement could be decided in the absence of a parcel-by-parcel evidentiary record. Nevertheless, the Town now seeks an opportunity to relitigate[16] its case before the Superior Court on the very parcel-by-parcel basis that it has, until now, argued is simply not required.

[¶26]  We would not ordinarily provide an opportunity for a litigant to do what it has opposed at every turn during years of litigation.  *See Me. Educ. Ass'n v. Me. Cmty. Coll. Sys. Bd. of Trs.*, 2007 ME 70, ¶¶ 15-20, 923 A.2d 914 (holding that a party's motion "seeking relief it had opposed during the original consideration of the action" is barred by the doctrine of judicial estoppel, which "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))).

[¶27]  We recognize, however, that the public's access to scarce resources such as sandy beaches in Maine is a matter of great importance and extraordinary public interest.  The public is obliged to rely on legal representatives to assert that interest.  In this singular case, in which those representatives chose a litigation strategy that had a substantial gap, equity demands that the matter should be

---

[16]  This opinion is the result of an order on a motion for reconsideration in which the Town raised this issue for the first time.  Before and during trial, and even on appeal, the Town resisted the Beachfront Owners' assertion that such a determination was necessary.

remanded to allow the parties to present evidence as to the location of each Beachfront Owner's specific parcel, and to give the court an opportunity to consider the factual record of public use already developed, so that the court can determine whether the Town established—as to each of those specific parcels of property—the elements necessary to support a declaration of a public prescriptive easement.[17]

[¶28]   We also note that the Beachfront Owners have already incurred considerable expense and expended significant effort in responding to the Town's arguments.   If the Town elects to have the Superior Court conduct a parcel-by-parcel reanalysis of the public prescriptive easement claim based upon the evidence of use already in the record, the trial court, in its discretion, may require the Town to reimburse the Beachfront Owners for their attorney fees and costs incurred as a result of those parcel-by-parcel reanalysis proceedings on remand.   *See* M.R. App. P. 14(b)(3); *Baker v. Manter*, 2001 ME 26, ¶¶ 14, 17, 765 A.2d 583 (recognizing the trial court's "inherent authority" to award attorney

---

[17]   To do so, the court must determine, with the presentation of additional evidence, the boundaries of each Beachfront Owner's parcel.  Beyond that, the court may hear additional argument on the sufficiency of the parcel-by-parcel evidence, but the parties may not introduce any new or additional evidence as to the uses giving rise to the prescriptive easement claim, and must rely on the evidence as already presented to support that cause of action.  They may, however, introduce evidence relevant to the title- and deed-based claims on which the court has yet to issue a decision, i.e., those remaining causes of action that the parties agreed would be tried in the second portion of the bifurcated trial, if the parties wish to go forward with those claims.

fees based on conduct in a judicial proceeding in "the most extraordinary circumstances" (quotation marks omitted)).

[¶29] Moreover, because we are remanding for further consideration, we also address one of the elements necessary for a successful prescriptive easement claim—adversity. Essential to our consideration of adversity in cases involving public recreational easements is the presumption of permission. We have long recognized the rebuttable presumption that public recreational uses are undertaken with the permission of the landowner.[18] *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364; *Eaton*, 2000 ME 176, ¶ 32, 760 A.2d 232; *S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶ 16, 697 A.2d 1280; *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124, 1130 (Me. 1984); *Inhabitants of the Town of Kennebunkport v. Forrester*, 391 A.2d 831, 833 (Me. 1978); *Piper v. Voorhees*, 130 Me. 305, 312, 155 A. 556 (1931); *Littlefield v. Hubbard*, 124 Me. 299, 304, 128 A. 285 (1925); *Mayberry v. Inhabitants of Standish*, 56 Me. 342, 353 (1868).

---

[18] In the case of a *private* prescriptive easement, if the claimant can establish the elements of acquiescence and continuous use for twenty years, adversity is presumed. *Androkites*, 2010 ME 133, ¶¶ 14, 17, 10 A.3d 677; *Lyons*, 2002 ME 137, ¶ 18, 804 A.2d 364. Nevertheless, "the presumption [of adversity] will not arise if there is an explanation of the use that contradicts the rationale of the presumption," such as when the user is a family member of the owner. *Androkites*, 2010 ME 133, ¶¶ 17-18, 10 A.3d 677; *Jacobs v. Boomer*, 267 A.2d 376, 378 (Me. 1970) (stating that the presumption of adversity applies unless the use is "contradicted or explained" (quotation marks omitted)). In addition, the twenty-year prescriptive period may be established by the tacking together of periods of use, but only by those with whom the claimant is in privity. *See Flaherty*, 2011 ME 32, ¶ 81, 17 A.3d 640; *Kornbluth v. Kalur*, 577 A.2d 1194, 1195 (Me. 1990).

[¶30]  The presumption of permission derives from the "open lands tradition" that Maine shares with a minority of other states.  *Weeks v. Krysa*, 2008 ME 120, ¶ 15, 955 A.2d 234; *D'Angelo*, 2005 ME 31, ¶ 11, 868 A.2d 239; *S.D. Warren Co.*, 1997 ME 161, ¶ 16, 697 A.2d 1280.  This tradition recognizes the State's desire to encourage the hunting, hiking, and other outdoor activities for which Maine is celebrated and on which much of Maine's economy is based.  *See Lyons*, 2002 ME 137, ¶¶ 14, 27, 804 A.2d 364; *see also* 5 M.R.S. § 6200 (2013) (stating that "the continued availability of public access to . . . recreation opportunities and the protection of the scenic and natural environment are essential for preserving the State's high quality of life"); 12 M.R.S. § 10108(4-A)(A)(1)-(2) (2013) (providing that the landowner relations program within the Department of Inland Fisheries and Wildlife "must . . . [e]ncourage landowners to allow outdoor recreationists access to their property to hunt, fish or engage in other outdoor recreational pursuits" and must "[f]oster good relationships between landowners and outdoor recreationists"). The presumption recognizes that public recreational use "is consistent with, and in no way diminishes, the rights of the owner in his land." *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364 (quotation marks omitted).

[¶31]  Although we have sometimes referred to the presumption as applicable to "wild and uncultivated" land, *id.*, the "wild and uncultivated" language has never been employed as a precise test.  In 1868, for example, we held

that "[t]he open and unenclosed condition of the land, a sandy, pitchpine, blueberry plain of trifling value, was a matter from which it might be presumed that the use was permissive." *Mayberry*, 56 Me. at 353. We have otherwise applied the presumption to land characterized as "unposted open fields or woodlands" and "unenclosed, unimproved and unoccupied" land. *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364; *Forrester*, 391 A.2d at 832-33 (quotation marks omitted); *see Shadan*, 1997 ME 187, ¶¶ 2, 7, 700 A.2d 245 (presuming permission as to an access road between homes in a subdivision).

[¶32] To the extent the applicability of the presumption was uncertain, we clarified in *Lyons* that the presumption of permission is not dependent on the type of land at issue (wild and uncultivated, for example), but instead on how the public uses the land (for recreation). 2002 ME 137, ¶¶ 20-25, 804 A.2d 364. Indeed, we and other courts specifically have applied the presumption to cases involving public recreational use of private beaches.[19] *See, e.g.*, *Augusta Country Club*, 477 A.2d at 1126, 1130 (applying the presumption to an action regarding a sand beach next to a golf course); *Littlefield*, 124 Me. at 304, 128 A. 285 (presuming

---

[19] The Town's reliance on *Eaton v. Town of Wells*, 2000 ME 176, 760 A.2d 232, to support its argument that the presumption of permission does not apply to beaches is unfounded. We issued our opinion in *Lyons* two years after the decision in *Eaton*, clarifying that the presumption of permission must indeed be applied regardless of the nature of the land. *Id.* ¶¶ 20-25. Moreover, the ownership of the Beach is decidedly different than the oceanfront property at issue in *Eaton*. The beachfront land in dispute in *Eaton* was owned by a single family that had assumed that the Town owned the sandy beach in front of its oceanfront property. *Id.* ¶¶ 8-9, 34, 39.

permission as to public use of "unenclosed seashore property"); *Clickner*, 35 A.3d at 467, 484-86 (presuming permission for public use of a beach on a privately-owned island). In sum, the presumption of permission must be applied in any matter in which a claimant seeks a public recreational prescriptive easement. *Lyons*, 2002 ME 137, ¶ 24, 804 A.2d 364. When the presumption is applied, the burden of proof is on the claimant to establish adversity.[20] *Id.* ¶ 25.

[¶33] There can be no dispute that this matter involves a claimed public recreational prescriptive easement over the entirety of the Beach. The Town specifically alleged that "the public[] . . . has acquired prescriptive rights in Goose Rocks Beach," and the court found as much in awarding a right to "general recreational activities on the entirety of Goose Rocks Beach, both wet and dry sand." Thus, this is precisely the type of matter in which *Lyons* requires that the presumption of permission be applied. On remand, when the court evaluates the element of adversity, it must consider whether the Town has rebutted the presumption.

[¶34] We reiterate that the public's recreational use of private land, when that use does not interfere with the ownership interest of the landowner, does not,

---

[20] The "presumption of permissive use does not result in burden shifting." *Lyons*, 2002 ME 137, ¶ 25, 804 A.2d 364. When the claimed prescriptive easement is public, the public—including the Town—is not permitted to benefit from the *presumption* applicable to private prescriptive easements that the claimant's use with the owner's knowledge and acquiescence was adverse to the owner; rather, the claimant seeking a public prescriptive easement must *prove* that its use was adverse to the owner. *Id.* ¶¶ 18, 25.

without more, rebut the presumption of permission to establish adverse use. *See Lyons*, 2002 ME 137, ¶¶ 17, 26, 804 A.2d 364. Because this record contains extensive evidence of general recreational use that may not satisfy the element of adversity, it will be critically important for the court on remand to apply the presumption of permission in determining whether the evidence establishes adversity as to each Beachfront Owner's parcel of property.[21]

2.     Easement by Custom

[¶35]  We also vacate the court's award of an easement by custom over the Beach.  Custom was developed in English common law to account for usage that "lasted from time immemorial, without interruption and as a right," and that was "reasonable, certain, peaceably enjoyed and consistent with other customs and laws."  4 Richard R. Powell, *Powell on Real Property* § 34.11[6], at 34-132 (quotation marks omitted).  It is "largely a dead doctrine in the United States" because "[i]t has been argued that no American custom could have lasted long enough to be immemorial, and that we have established methods for claiming and recording rights in land" that no longer necessitate employment of the doctrine. 4 Richard R. Powell, *Powell on Real Property* § 34.11[6], at 34-132 (footnotes omitted).  Although presented with several opportunities to do so through almost

---

[21]  Further, it is undisputed that portions of the Beach are owned by the Town and by a conservation trust.  To the extent the Town asserts that evidence of use of those portions of Beach should affect the rights of Beachfront Owners with respect to their own parcels, that assertion is incorrect.

two hundred years of land use litigation, we have never recognized an easement by custom as a viable cause of action in Maine. *Bell v. Town of Wells*, 557 A.2d 168, 179 (Me. 1989) (noting that "[t]here is a serious question whether application of the local custom doctrine to conditions prevailing in Maine near the end of the 20th century is necessarily consistent with the desired stability and certainty of real estate titles"); *Piper*, 130 Me. at 311, 155 A. 556 ("In Maine, there never has been affirmation of the recognition of a right of way by custom."); *see also Augusta Country Club*, 477 A.2d at 1129 n.7; *Hill v. Lord*, 48 Me. 83, 98 (1861)*; Littlefield v. Maxwell*, 31 Me. 134, 141 (1850); Op. Me. Att'y Gen. 80-108 ("An easement by custom is of doubtful validity in the State of Maine, and therefore cannot be used as a theory upon which to create public access to public lots."); 3 Herbert T. Tiffany & Basil Jones, *The Law of Real Property* § 935, at 624 (3d ed. 1939) (noting that some jurisdictions have held that "rights to use private land cannot thus be created by custom, for the reason that they would tend so to burden land as to interfere with its improvement and alienation, and also because there can be no usage in this country of an immemorial character"). Our refusal to recognize an easement by custom also comports with the decisions of other jurisdictions. *See, e.g., Graham v. Walker,* 61 A. 98, 99-100 (Conn. 1905) ("There being no such thing in Connecticut as a personal right of way established by custom . . . ."); *see also Attorney General ex rel. Adams v. Tarr*, 19 N.E. 358, 363 (Mass. 1889)

(stating that "a right by custom to maintain a building or permanent structure upon the land of another [can]not be acquired").

## C.     Public Trust Doctrine

[¶36]     Finally, notwithstanding the court's application of a public prescriptive easement to the intertidal zone (which we vacate) the court went on to declare separately the public's rights in the intertidal zone stemming from the public trust doctrine.[22] That determination is premature. The Beachfront Owners' declaratory judgment claim is the only claim to implicate the public trust, and although the Superior Court discussed in its order issues relating to the public trust doctrine, it has not yet decided that claim.  In addition, as noted earlier, the State did not file a claim for a declaratory judgment or any other cause of action raising the public trust doctrine.  We note also that the presumption of permission applies to the intertidal zone as well as to the dry sand for all general recreational activities.[23] Thus, no claims implicating the public trust doctrine are properly before us for review.

---

[22]   The public trust doctrine states that "the owner of shoreland above the mean high water mark presumptively [holds] title in fee to intertidal land subject only to the public's right to fish, fowl, and navigate." *Bell v. Town of Wells*, 557 A.2d 168, 171 (Me. 1989) (citing *Storer v. Freeman*, 6 Mass. (1 Tyng) 435, 438 (1810)); *see McGarvey*, 2011 ME 97, ¶ 18, 28 A.3d 620.

[23] General recreational activities include walking, sunbathing, picnicking, playing games, swimming, jet skiing, water skiing, knee boarding, tubing, surfing, windsurfing, boogie boarding, rafting, paddle boarding, snorkeling, and the like.

26

## D. Conclusion

[¶37]  We therefore vacate the judgment awarding the Town and Backlot Owners a prescriptive easement over Goose Rocks Beach, and deciding that the public has a right to engage in ocean-based activities in the intertidal zone pursuant to the public trust doctrine.  We remand the matter to the Superior Court for two tasks to be accomplished.  First, the court must conduct proceedings and issue a decision on the remaining pending causes of action that were the subject of the second portion of the bifurcated trial, to the extent the parties wish to continue to assert those claims.  Second, if the Town so elects, the court must determine the boundaries of each specific Beachfront Owner's parcel, reanalyze the evidence already in the record on a parcel-by-parcel basis to determine if the Town met its burden of establishing the elements of a public prescriptive easement as to each particular parcel, and then determine whether to award the Beachfront Owners their costs and fees related to that reanalysis.

The entry is:

> Order granting the Backlot Owners' right to intervene vacated.  Judgment vacated.  Remanded for further proceedings consistent with this opinion.

**On the briefs:**

Sidney St. F. Thaxter, Esq., David P. Silk, Esq., and Benjamin M. Leoni, Esq., Curtis Thaxter, LLC, Portland, for appellants Robert Almeder et al.

Christopher E. Pazar, Esq., Drummond & Dummond, Portland, for appellants Janice M. Fleming, Terrence G. O'Connor, and Joan M. Leahy

Amy K. Tchao, Esq., Melissa A. Hewey, Esq., Brian D. Willing, Esq., and David M. Kallin, Esq., Dummond Woodsum, Portland, for appellee Town of Kennebunkport

André G. Duchette, Esq., and Gregg R. Frame, Esq., Taylor, McCormack & Frame, LLC, Portland, for appellees "TMF Defendants"

Richard J. Driver, Margarete M.K. Driver, Alexander M. Lachiatto, and Judith A. Lachiatto, pro se appellees

Adam Steinman, Esq., Cape Elizabeth, for appellee Surfrider Foundation

Janet T. Mills, Attorney General, and Paul Stern, Dep. Atty. Gen., Office of Attorney General, Augusta, for appellee State of Maine

John A. Cunningham, Esq., and Noreen A. Patient, Esq., Eaton Peabody, Brunswick, for amicus curiae Maine Forest Products Council

Brian P. Winchester, Esq., Augusta, for amicus curiae Maine Snowmobile Association

Ivy L. Frignoca, Esq., Portland, for amicus curiae Conservation Law Foundation

28

**At oral argument:**

Sydney St. F. Thaxter, Esq. for all appellants

Amy Tchao, Esq. for appellee Town of Kennebunkport

André G. Duchette, Esq. for appellee "TMF Defendants"

Paul Stern, Dep. Atty. Gen., for appellee State of Maine

York County Superior Court docket number RE-2009-111
FOR CLERK REFERENCE ONLY