STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-2016-292

LESLIE FISSMER, Individually and as )
Trustee of the LESLIE S. FISSMER )
REVOCABLE TRUST, PATRICIA )
GRAMSE and R. REED GRAMSE, )
KAREN BURKE and WILLIAM )
BURKE, and ROBERT SIEGEL, )
                                      )
           Plaintiffs, )
                                        )
          v. )
                                        )
DAVID D. SMITH, CUNNER LANE, )
LLC, and CUNNER LANE II, LLC, )
                                        )
          Defendants. )

**DECISION**

Bench trial was held in this matter on May 30, 2023.[1] Trial was limited to an adverse possession claim brought by Plaintiff Leslie Fissmer, individually and as Trustee of the Leslie S. Fissmer Revocable Trust ("Ms. Fissmer"), regarding a small parcel of real property abutting her driveway and yard to which Defendants Cunner Lane II, LLC, and David Smith ("Mr. Smith" and, collectively, "Defendants") hold record title ("the Disputed Area").[2] The Court makes the following findings of fact and conclusions of law.

## I.    Procedural History

The unusual procedural history of this case warrants brief explanation. Justice Lance Walker presided over a trial in this matter in the Superior Court on June 18, 2018 ("the First Trial"). Principally at issue in the First Trial was the location of a private road called Cunner Lane, title to the paved road known as Cunner Lane and the twenty-foot-

---

[1] The Court took a view of the disputed parcel of real property and immediate surroundings in advance of trial.
[2] To be clear, Mr. Smith holds record title individually to a portion of the Disputed Area, and Cunner Lane II, LLC holds record title to the remainder.

REC'D CUMB CLERKS OFC
OCT 10 '23 AM11:17

wide Cunner Lane corridor depicted on a 1929 subdivision plan, and title to a five-foot-wide strip of land running parallel to and between the Cunner Lane corridor and the boundaries of Plaintiffs' properties.[3] Plaintiffs alleged that they had obtained title to portions of the Cunner Lane corridor and the five-foot-wide strip abutting each of their properties by adverse possession or through the Paper Streets Act, 23 M.R.S. §§ 3027, 3031-3035 (2018); 33 M.R.S. §§ 460, 469-A (2018).[4]

The Superior Court issued a written Judgment and Order dated October 11, 2018 ("the 2018 Judgment"), concluding, in pertinent part:

> On Count V [of Plaintiffs' Complaint against Defendants Cunner Lane, LLC and David D. Smith], judgment is entered for Plaintiffs. Plaintiffs have obtained fee simple title by adverse possession to the property abutting the western and northwestern edge of the paved road known as Cunner Lane.
> . . .
> As to Defendant Cunner Lane II, LLC's complaint, judgment is entered for Defendant in part and for Plaintiffs in part. . . . Cunner Lane II, LLC holds title in fee simple to the paved road known as Cunner Lane up to the western and northwestern edge of the pavement. To the extent the property deeded to Defendant Cunner Lane II, LLC extends to the west and northwest beyond the western and northwestern edge of the pavement, Cunner Lane II, LLC has no ownership rights in the property.
>
> As to Plaintiffs' complaint against Cunner Lane II, LLC, judgment is entered for Plaintiffs. To the extent the property deeded to Defendant Cunner Lane II, LLC extends to the west and northwest beyond the western and northwestern edge of the paved road known as Cunner Lane, Plaintiffs have obtained fee simple title to this property by adverse possession.

*Fissmer v. Smith*, No. RE-16-292, 2018 WL 6345056, at *10-11 (Me. Super. Ct. Oct. 11, 2018).

Mr. Smith, Cunner Lane, LLC, and Cunner Lane II, LLC timely appealed. Plaintiffs cross-appealed regarding the determination that Cunner Lane II, LLC the owner of the paved road known as Cunner Lane up to the northwestern and western edge of the

---

[3] As discussed in the 2018 Judgment, the paved road called Cunner Lane occupies a different location than the twenty-foot-wide Cunner Lane corridor depicted in the 1929 plan. The Court will hereinafter refer to the contemporary paved road as "the road" or "Cunner Lane."

[4] This case also formerly involved private roads known as Brook Road and Sunrise Drive.

pavement.

On appeal, the Law Court summarized its conclusions as follows, in relevant part:

- The court correctly concluded that Fissmer, the Burkes, and the Gramses had acquired title, by adverse possession, to the disputed property that they have used as their lawns, gardens, and driveways up to the paved edge of present-day Cunner Lane.

- Any adverse possession claim by Fissmer concerning the southernmost portion of the twenty-foot-wide corridor designated as Cunner Lane— the portion of that corridor to the south of her driveway—will require additional litigation.
. . .
- Any "additional litigation" undertaken may require the trial court to address the issue of res judicata.

*Fissmer v. Smith*, 2019 ME 130, ¶ 50, 214 A.3d 1054. The "southernmost portion of the twenty-foot-wide corridor designated as Cunner Law" to which the Law Court refers is the Disputed Area.

On remand from the Law Court, the matter was assigned to the undersigned. Defendants and Ms. Fissmer separately moved for entry of judgment regarding the Disputed Area. The Court denied both motions, concluding that Ms. Fissmer's claim to the Disputed Area was not barred by the doctrine of res judicata and that it would be necessary to reopen the evidence to resolve Ms. Fissmer's claim.

Mr. Smith continues to object to the Court's decision to reopen the evidence. "The trial court has discretion in determining whether a party may reopen its case after the close of the evidence." *Dalphonse v. St. Laurent & Son, Inc.*, 2007 ME 53, ¶ 16, 922 A.2d 1200 (quoting *In re Danielle S.*, 2004 ME 19, ¶ 2, 844 A.2d 1148). In deciding whether to permit presentation of additional evidence, the Court should consider whether doing so would prevent an unfair result or inaccurate adjudication, give the Court a more complete picture, or create an unfair disadvantage to any party. *Dalphonse*, 2007 ME 53, ¶ 16, 922 A.2d 1200.

Given the passage of time since the first trial and the reassignment of the case to the undersigned after remand from the Law Court, the Court concludes that reopening the evidence was appropriate. *See id.* ¶¶ 17-18 (holding that trial court abused its discretion in declining to reopen evidence when three years passed between trial and entry of judgment). The Court will, of course, consider any inconsistencies in testimony at the two trials in evaluating the credibility and weight of the testimony.

## II.    Findings of Fact

Mr. Smith purchased his real property on Cunner Lane in 1998. (Trial 2 Tr. 166.) Mr. Smith owns Cunner Lane II, LLC, which was formed to purchase the fee under the paper streets Cunner Lane and Sunrise Drive. (Trial 2 Tr. 142.) Prior to 2018, Mr. Smith visited his property for about thirty days out of the year. (Trial 2 Tr. 167.) He began visiting more frequently when he constructed a second home on his property. (Trial 2 Tr. 166-67.)

Ms. Fissmer purchased her home on Cunner Lane in 1985.[5] (Trial 2 Tr. 18.) She has lived in the home seasonally from 1985 to the present, except from 1997 to 2006 or 2007, during which time she lived in the home full-time. (Trial 2 Tr. 19.) Ms. Fissmer now resides in Florida and continues to visit her home in Maine during the summer. (Trial 2 Tr. 16.)

Ms. Fissmer has been familiar with the surrounding neighborhood since 1947 because she would spend every summer at other homes in the neighborhood with her grandparents or parents. (Trial 1 Tr. 21-22; Trial 2 Tr. 19.) Since her earliest memories of Cunner Lane, the homes that belong to Ms. Fissmer and Mr. Smith[6] have stood in the same locations as they do now. (Trial 2 Tr. 21.)

---

[5] The present owner of record is the Leslie S. Fissmer Revocable Trust.
[6] Mr. Smith later built a second home on his property.

The Disputed Area is bounded by a footpath, the paved road known as Cunner Lane, Ms. Fissmer's driveway, and a portion of her yard. (Trial 2 Tr. 29-30; Pl.'s Ex. 40.) The Disputed Area contains an apple tree, some bushes, grassy areas, and a wooden post. (Trial 1 Tr. 27, 29; Trial 2 Tr. 27.) Ms. Fissmer's husband installed the wooden post near the intersection of their driveway and Cunner Lane soon after they bought the house, in either 1985 or 1986. (Trial 1 Tr. 29; Trial 2 Tr. 27.) The post has the house number, 20, on it. (Trial 2 Tr. 27.)

The bushes in the Disputed Area are wild plants, including blackberries, raspberries, and honeysuckle. (Trial 2 Tr. 33.) Ms. Fissmer harvests the berries, and she would trim the bushes when they sprouted in the grass or grew over her driveway. (Trial 2 Tr. 33, 53-54.) She has "cleaned out" bittersweet vines and weeds from the bushes a few times. (Trial 2 Tr. 54.) The bushes separate Ms. Fissmer's yard from a footpath, which people from nearby neighborhoods use to access the beach. (Trial 2 Tr. 33, 39.)

There were no ornamental bushes such as lilacs, rhododendrons, or azaleas in the Disputed Area when Ms. Fissmer purchased her property, and she has never planted any. (Trial 2 Tr. 78.) She has, however, planted lilies in the grassy area near her driveway. (Trial 2 Tr. 78-79.) Mr. Smith characterized the vegetation in the Disputed Area as "[g]arbage, scrub, weeds." (Trial 2 Tr. 156.)

Since 1985, Ms. Fissmer has maintained the small section of grass between the pavement and the bushes by mowing it weekly and fertilizing it. (Trial 2 Tr. 37.) From 1985 to 2004, Ms. Fissmer or her husband would mow the grass, but beginning in 2004, Ms. Fissmer hired a landscaper. (Trial 2 Tr. 52.)

Ms. Fissmer has also hired landscapers to trim the branches of the apple tree that hung over her driveway and to remove dead branches on two or three occasions. (Trial 1

Tr. 36; Trial 2 Tr. 82-83.) She tries to keep the apple tree healthy. (Trial 2 Tr. 53, 83.) Ms. Fissmer does not eat the apples from the tree, but her grandchildren have eaten them.[7] (Trial 2 Tr. 83.)

Reed Gramse, who has lived full-time in his home on Cunner Lane since 1988, testified that he is familiar with the apple tree and wooden post in the Disputed Area. (Trial 2 Tr. 97, 98.) He has seen Ms. Fissmer's landscapers weed whacking around the apple tree. (Trial 2 Tr. 108.) He has also seen Ms. Fissmer tending to the grass and vegetation in the Disputed Area. (Trial 2 Tr. 99-100.)

Neither Mr. Smith nor his predecessors ever gave Ms. Fissmer permission to use the Disputed Area, and she did not ever feel the need to ask permission. (Trial 1 Tr. 42; Trial 2 Tr. 57.) Ms. Fissmer has not shared the disputed area with anyone other than family, friends, and guests she invited. (Trial 2 Tr. 59.) Before the commencement of this litigation, Ms. Fissmer never saw Mr. Smith, his predecessor, or his landscapers in the Disputed Area. (Trial 2 Tr. 60.)

A water connection is located on a portion of the Disputed Area of which Cunner Lane II, LLC is the owner of record. (Trial 2 Tr. 89-91; Defs.' Ex. 41.) The Portland Water District has an easement regarding that water connection. (Trial 2 Tr. 91, 95-96.) Every spring, the Portland Water District enters the Disputed Area to connect the water line to Mr. Smith's homes. (Trial 2 Tr. 91.)

---

[7] In the 2018 Judgment, Justice Walker made the following factual findings:

> On the southeasternmost point of the disputed area of Ms. Fissmer's lawn, there is a post displaying her address and an apple tree. She occasionally has the tree branches trimmed but admitted that she otherwise does little to maintain it. Nonetheless, she testified that she maintains the tree as though it were her own.

*Fissmer*, 2018 WL 6345056, at *5 (citations omitted).

Robert Ruminski, a property manager, has been taking care of Mr. Smith's property since about 2000. (Trial 2 Tr. 114.) In the winter, he visits roughly once a week to check on the property, and in the summer, he spends at least a full day every week at the property to mow and perform other maintenance. (Trial 2 Tr. 115.)

Mr. Ruminski testified that there are parts of Mr. Smith's property that Mr. Smith prefers to leave in a natural state for privacy and for the birds. (Trial 2 Tr. 118, 129-30.) He testified that it is not unusual among his residential customers to leave portions of their properties in a natural state for privacy, birds, and other animals. (Trial 2 Tr. 131.)

Although Mr. Ruminski testified that he has cleaned trash out of the Disputed Area, trimmed the apple tree, and mowed around the wooden post and apple tree, the Court does not credit that testimony. (Trial 2 Tr. 117-18, 125-28, 136-37.) Mr. Gramse testified that he has never seen Mr. Ruminski in the Disputed Area. (Trial 2 Tr. 111.)

## III. Conclusions of Law

"A party claiming title by adverse possession has the burden of proving, by a preponderance of the evidence, that possession and use of the property was (1) actual; (2) open; (3) visible; (4) notorious; (5) hostile; (6) under a claim of right; (7) continuous; (8) exclusive; and (9) for a duration exceeding the twenty-year limitations period." *Fissmer*, 2019 ME 130, ¶ 41, 214 A.3d 1054 (quoting *Weeks v. Krysa*, 2008 ME 120, ¶ 12, 955 A.2d 234). Ms. Fissmer must establish all the above elements with respect to the Disputed Area.

### A. Actual

"'Actual possession means physical occupancy or control over property' and 'is established when the evidence shows an actual use and enjoyment of the property that is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property.'" *Fissmer*, 2019 ME 130, ¶ 42, 214 A.3d 1054 (quoting *Harvey v.*

*Furrow*, 2014 ME 149, ¶ 12, 107 A.3d 604).

Ms. Fissmer's use of the Disputed Area was of the same kind and degree as an average owner's use of such property. From 1985 to the initiation of this suit, Ms. Fissmer regularly, although seasonally, maintained the grass in the Disputed Area and harvested berries from the bushes. The wooden post with her house number was displayed in the Disputed Area from at least 1986 to the present, except for a brief time when Mr. Smith removed it.

Defendants correctly point out that Ms. Fissmer's infrequent "cleaning out" of the bushes and trimming of the apple tree at indeterminate times between 1985 and the present would not suffice to establish actual use. These uses can, however, be aggregated with her other uses of the Disputed Area during that time. And although trimming only the apple tree branches that crossed the boundary onto Ms. Fissmer's property would not be adverse, *cf. Atkins v. Adams*, 2023 ME 59, ¶¶ 13-24, ___ A.3d ___, Ms. Fissmer testified that her landscapers trimmed overgrowth and dead branches to keep the tree healthy.

Ms. Fissmer's maintenance of the wild bushes as a privacy barrier is not the same as "doing nothing." (Defs.' Closing Arg. 5.) As Mr. Ruminski testified, it is not uncommon for his residential clients to leave native bushes mostly untouched for privacy and for birds' enjoyment. And, as previously discussed, Ms. Fissmer did not leave the bushes entirely untouched. She trimmed overgrowth, harvested the berries, and occasionally weeded out undesirable species.

Ms. Fissmer has used the Disputed Property as landowners would typically use their front lawns and similarly to how she has used the rest of her front lawn. *See Fissmer*, 2019 ME 130, ¶ 46, 214 A.3d 1054 ("Maintaining a lawn, caring for flowers, trees, and shrubs . . . and keeping driveways and mailboxes are all uses that are consistent with

complete ownership."). Her use of the Disputed Area has been "actual" from 1985 to present.

### B. Open, Visible, and Notorious

"Open means without attempted concealment. Visible means capable of being seen by persons who may view the premises. Notorious means known to some who might reasonably be expected to communicate their knowledge to an owner maintaining a reasonable degree of supervision over his property." *Harvey*, 2014 ME 149, ¶ 13, 107 A.3d 604 (quoting *Striefel v. Charles-Keyt-Leaman P'ship*, 1999 ME 111, ¶ 11, 733 A.2d 984).

Ms. Fissmer made no attempt to conceal her use of the Disputed Area. The post with her house number is plainly visible from the road. Her efforts to maintain the grass are apparent in the summer. Her landscapers, when working in the Disputed Area, would have been visible from the road. Mr. Gramse, in fact, has seen Ms. Fissmer and her landscapers working in the Disputed Area. Ms. Fissmer's uses of the Disputed Area discussed above were open, visible, and notorious.

### C. Hostile

"Hostile simply means that the possessor does not have the true owner's permission to be on the land and has nothing to do with demonstrating a heated controversy or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate." *Fissmer*, 2019 ME 130, ¶ 40, 214 A.3d 1054 (quoting *Striefel*, 1999 ME 111, ¶ 13, 733 A.2d 984).

Ms. Fissmer testified, and Mr. Smith did not refute, that she never received permission from Mr. Smith or his predecessor to use the Disputed Area. Her use was hostile.

Defendants argue that all or most of Ms. Fissmer's uses of the Disputed Area were

presumptively permissive because they can be characterized as "recreational" and because the Disputed Area is "wild and uncultivated." Defendants misconstrue the holdings of the cases they cite in support. As the Law Court clarified in *Almeder v. Town of Kennebunkport,* "the presumption of permission is not dependent on the type of land at issue (wild and uncultivated, for example), but instead on how *the public* uses the land (for recreation)." 2014 ME 139, ¶ 32, 106 A.3d 1099 (emphasis added). The Disputed Area is not used generally by the public for recreation. Ms. Fissmer's own uses are not presumptively permissive simply because some of the uses may be categorized as "recreational." *See Fissmer,* 2019 ME 130, ¶ 44, 214 A.3d 1054 (listing "recreat[ing] on the grass" as among the uses establishing adverse possession).

### D. Claim of Right

"Under a claim of right means that the claimant is in possession as owner, with intent to claim the land as its own, and not in recognition of or subordination to the record title owner." *Harvey,* 2014 ME 149, ¶ 15, 107 A.3d 604 (quoting *Striefel,* 1999 ME 111, ¶ 14, 733 A.2d 984).

Ms. Fissmer never received permission from Mr. Smith or his predecessor to use the Disputed Area, and never thought that she needed permission. She has used the Disputed Area as her own since purchasing her home.

### E. Continuous

"Continuous means occurring without interruption, and, like actual possession and use, continuous possession and use requires only the kind and degree of occupancy (i.e., use and enjoyment) that an average owner would make of the property." *Fissmer,* 2019 ME 130, ¶ 43, 214 A.3d 1054 (quoting *Harvey,* 2014 ME 149, ¶ 16, 107 A.3d 604).

Seasonal use, as much of Ms. Fissmer's use of the Disputed Area was, does not

necessarily preclude a finding of continuity. Indeed, Ms. Fissmer's seasonal enjoyment of the berry bushes, seasonal placement of snow stakes, and seasonal landscaping activities are all typical of an average landowner. The wooden post remained regardless of season.

Defendants' argument that continuity is interrupted because Ms. Fissmer's uses of the Disputed Area were not all concurrent with each other is meritless. Ms. Fissmer maintained seasonal and year-round uses that in the aggregate at all points in time from 1985 to the present satisfied the elements of adverse possession. *See Fissmer*, 2019 ME 130, ¶ 48, 214 A.3d 1054 ("[W]e consider a claimant's activities 'in the aggregate, i.e., in the context of a claimant's overall use of the property.'" (quoting *Harvey*, 2014 ME 149, ¶ 19, 107 A.3d 604)).

### F. Exclusive

"Exclusive possession and use means that the possessor is not sharing the disputed property with the true owner or public at large." *Harvey*, 2014 ME 149, ¶ 16, 107 A.3d 604 (quoting *Striefel*, 1999 ME 111, ¶ 17, 733 A.2d 984). Ms. Fissmer demonstrated that she used the Disputed Area exclusive of any others who did not have her permission, including Mr. Smith, from 1985 to the initiation of this suit.

The fact that the Portland Water District has an easement to access the Disputed Area to connect and disconnect Mr. Smith's water does not defeat exclusivity. The water connection is located in a part of the Disputed Area owned by Cunner Lane II, LLC, but it does not benefit property owned by Cunner Lane II, LLC. Ms. Fissmer, therefore, shares the Disputed Area with neither the true owner nor the public at large when the Portland Water District accesses the water line.

### IV. Conclusion

Ms. Fissmer has established the existence of all the foregoing elements for a period

of more than twenty years. She has, therefore, proven her adverse possession claim to the Disputed Area. The Court will delay entry of final judgment to allow Ms. Fissmer to produce an adequate description of the boundaries of the Disputed Area, as she has requested.

The entry is:

Plaintiff Leslie Fissmer, Individually and as Trustee of the Leslie S. Fissmer Revocable Trust, is entitled to entry of judgment in her favor on her adverse possession claim regarding the Disputed Area. As requested by Ms. Fissmer, the Court will delay entry of judgment until the parties submit an agreed-upon description of the Disputed Area.

The Clerk is directed to incorporate this Decision into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _10/10/23_

_____
MaryGay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 10/10/2023