MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2016 ME 114
Docket:       Cum-14-531
Argued:       November 4, 2015
Decided:      July 19, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.


CEDAR BEACH/CEDAR ISLAND SUPPORTERS, INC., et al.

v.

GABLES REAL ESTATE LLC


JABAR, J.

[¶1]   Gables Real Estate LLC (Gables) appeals from a judgment of the Superior Court (Cumberland County, *Mills, J.*), entered after a three-day bench trial, declaring that the public has a prescriptive easement over a parcel of property Gables owns known as Cedar Beach Road.   Because we determine that the elements of adversity and nonacquiescence were not established, we vacate the judgment.

## I.  BACKGROUND

[¶2]   Members of the public, both individually and collectively as Cedar Beach/Cedar Island Supporters, Inc. (the claimants), brought this action seeking a declaratory judgment that the public had acquired a prescriptive easement over a privately-owned right-of-way known as Cedar Beach Road.   In its seventy-three-page judgment addressing these claims, the court's discussion of this

2

property and its use covered testimony presented about the actions of various individuals since the early twentieth century. The court made numerous findings of fact, all of which are supported by competent evidence in the record. For the sake of brevity, and because we have no reason to question any of the court's findings, we reference only a very limited number of those findings below.

[¶3] Eugene McCarty owned Cedar Beach Road from 1926 to 1957. During his ownership, he permitted the public to walk down Cedar Beach Road to access Cedar Island Beach and the Small Beach (collectively, the beaches). To keep vehicular traffic off of the road, however, he installed a chain, which remained in place for many years. In 1959, McCarty's estate transferred certain property (Parcel I, or, the Ridge Property) to his niece, Julia Sturtevant, and her daughter, Meredith Starbranch. Also in 1959, Sturtevant and her husband purchased another parcel previously owned by McCarty (Parcel II, or, the Cedar Beach Road), which was transferred to Sturtevant and Starbranch in 1961.

[¶4] Starting in the 1960s, the use of the road by members of the public became a source of complaints by the owners of the road and some of the families who had deeded rights-of-way over the road because members of the public frequently littered on Cedar Beach Road and used the road to attend parties on the

neighboring beaches. The Haley family, which owned[1] a deeded appurtenant easement over Cedar Beach Road, erected two six-foot pieces of chain-link fence across the road sometime between 1978 and 1980. Within days the fence was "mowed down by a pickup truck" driven by Scott Allen, a member of the public who did not reside on Cedar Beach Road.

[¶5] Cedar Beach Road was acquired by Richard and Phyllis Perry in 1982. In December 1987, in compliance with 14 M.R.S. § 812 (2015),[2] the Perrys and the owners of an adjacent parcel posted a notice to the public on their property for six successive days giving notice of their intent to prevent acquisition of a right-of-way.

[¶6] Charles and Sally Abrahamson acquired the property in 1998. The Abrahamsons posted notice of their intent to prevent the acquisition of a right-of-way on Cedar Beach Road again in 1999. For many years, Charles Abrahamson permitted the public to use Cedar Beach Road to access the beaches.

---

[1] Mark Haley's parents, Harold and Norma Haley, owned property on Bailey Island and held a deeded appurtenant easement over Cedar Beach Road.

[2] The statute provides in relevant part that

> [i]f a person apprehends that a right-of-way or other easement in or over his land may be acquired by . . . the public, he may give public notice of his intention to prevent the acquisition of such easement by causing a copy of such notice to be posted in some conspicuous place upon the premises for 6 successive days . . . and such posting or recording shall prevent the acquiring of such easement by use for any length of time thereafter

14 M.R.S. § 812 (2015).

4

However, on Labor Day 2011, Abrahamson blocked the road, precipitating this court action. After the underlying trial but prior to the court's entry of judgment, Gables acquired Cedar Beach Road from the Abrahamsons.

[¶7] After a three-day bench trial, the court entered a judgment declaring that the public had acquired a prescriptive easement over Cedar Beach Road, concluding that the claimants had satisfied all the elements of a public prescriptive easement, and specifically that they "ha[d] proved adversity." The court concluded that continuous use of the road by the public had been established for the period between 1959 and 1987. The court concluded that evidence of loud parties on the beach, "trashing" of the beach by dogs and humans, littering, and taking down the chain-link fence erected by the Haley family was "sufficient to establish adversity," and held that this conduct exceeded traditional recreational uses and was clearly undertaken without permission. The court also concluded that Gables failed to show nonacquiescence, ruling that the Haleys' erection of the chain-link fence did not constitute a nonacquiescent act because the Haley family was not the fee owner of Cedar Beach Road.

[¶8] The court also determined that the actual permission McCarty gave to the public ended with his death in 1957. Despite this, the court held that the chain McCarty placed across the entrance of Cedar Beach Road continued to serve McCarty's original purpose of prohibiting motor vehicle travel along the road.

There was conflicting evidence regarding whether other potential acts of nonacquiescence occurred in the 1960s and 1970s, such as the presence of a no trespassing sign or other such message at the entrance of Cedar Beach Road. The court ultimately found the opposing testimony on these acts of nonacquiescence to be more credible.

[¶9]  Gables timely appealed.  *See* 14 M.R.S. § 1851 (2015); M.R. App. P. 2(b).

## II.  DISCUSSION

[¶10]  We review a public prescriptive easement claim de novo.  *Almeder v. Town of Kennebunkport*, 2014 ME 139, ¶ 18, 106 A.3d 1099; *see also Loavenbruck v. Rohrbach*, 2002 ME 73, ¶ 11, 795 A.2d 90 ("What acts of dominion will result in creating title by adverse possession is a question of law." (alteration omitted) (quotation marks omitted)).

[¶11]  To establish the existence of a public prescriptive easement, the party seeking to establish the easement must prove "(1) continuous use; (2) by people who are not separable from the public generally; (3) for at least twenty years; (4) under a claim of right adverse to the owner"; and either "(5) with the owner's knowledge and acquiescence; or (6) a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed."  *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 15, 804 A.2d 364.

6

[¶12]   Central to the instant case are the concepts of adversity and nonacquiescence in the context of the acquisition of a public prescriptive easement. "Acquiescence differs from adversity in that adversity regards the actions of the claimant, whereas acquiescence looks to the actions of the owner."  *Almeder*, 2014 ME 139, ¶ 21, 106 A.3d 1099.

[¶13]  Adversity is proven through evidence that the claimant has used the property "(1) in the absence of the owner's express or implied permission, and (2) as the owner would use it, disregarding the owner's claims entirely, using it as though the claimant owns the property himself (3) such that the use provided the owner with adequate notice that the owner's property rights are in jeopardy."  *Id.* ¶ 20, (alterations omitted) (quotation marks omitted).

[¶14]  In the case of a private prescriptive easement, adversity is presumed if the claimant shows that he has used the property continuously for twenty years and the owner has acquiesced.  *Id.* ¶ 29 n.18.  However, when a party is claiming the existence of a public prescriptive easement, the party must prove adversity because the public recreational use of private uncultivated lands is presumed to be permissive.  *Id.* ¶ 29; *Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364.

[¶15]  The presumption of permission promotes the long tradition in Maine of public recreational use of private property by assuring that such use "is consistent with, and in no way diminishes, the rights of the owner in his land."

*Lyons*, 2002 ME 137, ¶ 19, 804 A.2d 364 (quotation marks omitted). The use of a way by members of the public to access properties where they conduct recreational activities does not rebut the presumption of permission concerning that way. *See S.D. Warren Co. v. Vernon*, 1997 ME 161, ¶¶ 15-17, 697 A.2d 1280. The presumption serves an important societal purpose in that it allows for greater access to Maine's renowned natural features by permitting landowners to rely on the presumption of permission to protect their ownership interests, rather than encouraging them to take steps to restrict recreational use of their lands. *See Almeder*, 2014 ME 139, ¶ 30, 106 A.3d 1099.

[¶16] To rebut the presumption of permission, adversity must have been sustained continuously for at least twenty years. *See Blackmer v. Williams*, 437 A.2d 858, 860 (Me. 1981) (holding that "[t]o establish an easement by prescription, a party must prove that the elements of prescriptive use have continued for a period of at least twenty years"). The level of adversity required is a disregard of the owner's claims entirely and use of the land as though the claimant owned the property. *Stickney v. City of Saco*, 2001 ME 69, ¶ 21, 770 A.2d 592.

[¶17] In *S.D. Warren Co.*, the plaintiff landowner attempted to establish both private and public prescriptive easements over a right-of-way on a neighboring landowner's property. 1997 ME 161, ¶¶ 1-3, 697 A.2d 1280. We

held that the plaintiff's use of the road for commercial purposes satisfied the adversity element for purposes of a private prescriptive easement. *Id.* ¶ 11. In an attempt to rebut the presumption of permission and establish a public easement, the claimant submitted evidence that an independent logger had recently used the right-of-way, and that two hunters regularly used the right-of-way to access hunting grounds. *Id.* ¶¶ 15, 17. We ruled that this level of public activity did not provide sufficient adversity to overcome the presumption of permission and establish a public easement. *Id.* ¶ 17.

[¶18] In *Lyons*, members of the public claimed to have used a right-of-way on a school's property for at least twenty years in order to participate in "hunting, fishing, snowmobiling, and other recreational activities." 2002 ME 137, ¶¶ 7, 16, 804 A.2d 364. After the school became concerned about "abusive uses" of the way by all-terrain vehicles, the school erected a barrier across the right-of-way. *Id.* ¶ 5. Members of the public brought a lawsuit against the school, claiming that a public prescriptive easement existed over the right-of-way. *Id.* The plaintiffs presented only two pieces of evidence to demonstrate adversity: first, that the school had complied with requests by members of the public to remove a cable that it had placed across the road in 1978 and, second, that there were occasionally members of the public whose misbehavior on the property prompted the school to request that they leave. *Id.* ¶ 30. In holding that the claimants had not put forward

sufficient evidence of adversity to overcome the presumption of permission, we stated that "one or two incidents of hostility in a fifty-year history of public recreational use of a way [are] insufficient to support a public, prescriptive easement claim." *Id.*

[¶19] Here, the trial court concluded that adversity had been established, and thus the presumption of permission overcome, based on three activities: (1) the occurrence of loud parties on the beaches between 1962 and 1986, (2) littering on the road by members of the public, and (3) the removal of a chain-link fence placed across Cedar Beach Road sometime between 1978 and 1980.[3]

[¶20] The first two activities are insufficient to establish adversity. The loud parties referenced by the witnesses took place on the beaches, not on the road over which claimants assert a public easement, and the actions of the public on the beaches cannot be used to establish adversity concerning the road. The use of a right-of-way to access another property for recreational activities—even if those activities might be deemed adverse to the other property—does not constitute

---

[3] In discussing whether the public's use of the road was adverse to the interests of the property owners, the court also referred to testimony that pedestrians stepped over the chain or walked around it. To the extent that this evidence is factored into the court's analysis of adversity, that evidence is insufficient to defeat the presumption of permission. As the court found, the purpose of the chain was to block *vehicular* traffic on the road, and it was not erected and maintained to interfere with the use of the road by *pedestrians*. The court found that McCarty, who installed the chain, "welcomed people using the road." The court also accepted the testimony of many witnesses who stated that there was a well-worn footpath around the posts supporting the chain and that it was common for pedestrians to simply step over the chain, which hung low to the ground. These findings establish that the owners permitted pedestrians to use the road, which means that the use of the road by those pedestrians could not have been sufficiently adverse to overcome the presumption of permission.

adversity sufficient to overcome the presumption of permission. *See S.D. Warren Co.*, 1997 ME 161, ¶¶ 15-17, 697 A.2d 1280. Similarly, although litter may be unpleasant to find on one's property, littering is not the type of hostile action that shows disregard of the owner's claims entirely and use of the land as though the claimant owned the property. *Stickney*, 2001 ME 69, ¶ 21, 770 A.2d 592.

[¶21] The third and most important activity that the court deemed proof of adversity was the removal of the chain-link fence put up by the Haley family sometime between 1978 and 1980. The consideration of this incident as a dispositive factor in determining adversity is problematic for two reasons. First, as we concluded in *Lyons*, "one or two" incidents over a period of decades do not sufficiently establish adversity. 2002 ME 137, ¶ 30, 804 A.2d 364. In order to establish a prescriptive easement, all required elements must have been present continuously during the prescriptive period. Although the continuity required does not necessarily require an uninterrupted constancy, more than one incident over a twenty-seven-year prescriptive period is required.

[¶22] Second, although the court properly viewed the removal of the chain-link fence as evidence of adversity, it erroneously ruled that erection of the fence by the Haleys was not evidence of nonacquiescence sufficient to defeat a prescriptive easement because the Haley family was not the fee owner of Cedar Beach Road.

[¶23] The owner of an appurtenant easement may take action to protect his or her enjoyment of that easement. Richard R. Powell, *Powell on Real Property* § 34.17 (Michael Allen Wolf ed., 2005). The right of an easement holder to protect his interest in an easement against a stranger is "absolute." *Hultzen v. Witham*, 146 Me. 118, 126, 78 A.2d 342 (1951); *see also Waterbury Trust Co. v. G.L.D. Realty Co.*, 182 A. 466, 467 (Conn. 1936) (holding that an easement holder may "by appropriate actions . . . protect himself in the enjoyment of his easement"); *Morgan v. Moore*, 69 Mass. 319, 322 (1855) (stating that an easement holder's rights are independent of the rights of the landowner, and that an easement holder "can maintain an action to vindicate and establish his right . . . to prevent a disturbance of his easement").

[¶24] The Haley family owned a deeded appurtenant easement over Cedar Beach Road and therefore had the authority to protect the easement. If the removal of the fence constituted an act of adversity, the placement of the fence will conversely constitute an indication of nonacquiescence. Although "one or two" incidents over a period of time do not establish adversity, *Lyons*, 2002 ME 137, ¶ 30, 804 A.2d 364, a single act of nonacquiescence does interrupt a prescriptive easement claim, *see Dartnell v. Bidwell*, 115 Me. 227, 230, 98 A. 743, 745 (1916). Here, the Haleys took action to protect the easement over Cedar Beach Road. The

12

fence, even if standing for only a few days, sufficiently interrupted any prescriptive period.

[¶25] Because the actions of the Haley family in erecting a chain-link fence across the road sometime between 1978 and 1980 evidenced a clear demonstration of nonacquiescence sufficient to defeat the creation of a public prescriptive easement at that time, and because the countervailing evidence of adversity after 1980 was insufficient to rebut the presumption of permission, the record compels us to determine that Gables established nonacquiescence by the erection of the chain-link fence, thereby defeating the claimants' action for recognition of a public prescriptive easement as a matter of law.[4]

The entry is:

---

[4] Because we vacate the court's judgment and enter judgment for Gables, we need not address the parties' arguments concerning laches. The operative event triggering the need for action was the removal of the fence between 1978 and 1980 by a member of the public. In *Longley v Knapp,* the plaintiffs had enjoyed unrestricted use of a right-of-way for years, and brought an action for declaration of a prescriptive easement only when they were excluded from accessing that road. 1998 ME 142, ¶ 11, 713 A.2d 939. We held that it was neither unreasonable nor unexplainable for the plaintiffs to wait to bring the action for declaratory judgment until they were excluded. *Id.* Here, the Haley fence excluded the public from use of the road, and yet the plaintiffs waited more than thirty years, until they were again excluded, to bring the instant action.

Gables advances a strong argument that it has been prejudiced by the claimants' delay in bringing this action. It contends that its ability to produce evidence of nonacquiescence has been constrained by the death and incapacitation of many witnesses who would have been able to testify to many of the events and circumstances that the property owners were not able to establish.

Judgment vacated, and remanded for proceedings consistent with this opinion.

---

**On the briefs:**

Christian T. Chandler, Esq., and Benjamin M. Leoni, Esq., Curtis Thaxter, LLC, Portland, for appellant Gables Real Estate, LLC

David W. Bertoni, Esq., Stacy O. Stitham, Esq., and Anne M. Torregrossa, Esq., Brann & Isaacson, Lewiston, for appellee Cedar Beach/Cedar Island Supporters, Inc.

**At oral argument:**

Christian T. Chandler, Esq., for appellant Gables Real Estate, LLC

David W. Bertoni, Esq., for appellee Cedar Beach/Cedar Island Supporters, Inc.

Cumberland County Superior Court docket number RE-2012-392
FOR CLERK REFERENCE ONLY