STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                     CIVIL ACTION
                                                  DOCKET NO. RE-22-37

GREGORY L. SNOW & ARLENE Q.       )
SNOW,                             )
                                  )
                                  )     **ORDER ON PLAINTIFFS' MOTION**
    Plaintiffs/Counterclaim Defendants,  )     **FOR SUMMARY JUDGMENT**
                                  )
    v.                            )
                                  )
JASON S. CORLISS,                 )
                                  )
    Defendant/Counterclaim Plaintiff.  )

This case arises from a dispute over whether Plaintiffs/Counterclaim Defendants Gregory

and Arlene Snow ("the Snows") have acquired easement rights over a private road owned by

Defendant/Counterclaim Plaintiff Jason Corliss ("Mr. Corliss"). The Snows have moved for

summary judgment on Count I (Implied Quasi-Easement), Count II (Prescriptive Easement), and

Count III (Nuisance) of the Complaint, and on both counts of Mr. Corliss's Counterclaim

(Trespass and Intentional Infliction of Emotional Distress). For the following reasons, the Court

denies the Snows' motion with respect to Counts I-III of the Complaint and with respect to the

Trespass claim set forth in the Counterclaim. The Court, however, grants the motion with respect

to Mr. Corliss's Intentional Infliction of Emotional Distress ("IIED") claim.

## FACTS

The following facts are contained in the summary judgment record and appear to be

uncontroverted: The Snows and Mr. Corliss own neighboring properties in Pittston, Maine. Pls.'

S.M.F. ¶¶ 1-2. The property at issue—a 35-foot-wide strip of land containing a road ("the

Road")—is owned by Mr. Corliss and stretches approximately 1,160 feet from the westerly side

of Route 27 to Corliss Gravel Pit, Mr. Corliss's gravel business located on his property. *Id.* ¶¶ 2-

3; Def.'s Opp. S.M.F. ¶ 2. While the strip of land containing the Road is 35 feet wide, the Road itself is at most 18 feet wide, and in some spots, as narrow as 14 feet wide. Def.'s Opp. S.M.F. ¶ 4. The Snows' property abuts the Road to the south. Pls.' S.M.F. ¶ 3; Def.'s Opp. S.M.F. ¶ 7.

Prior to 1949, the Snows' property and the 35-foot-wide parcel were held in common ownership by Kenneth Esponnette. Pls.' S.M.F. ¶¶ 4, 7. On November 17, 1949, Mr. Esponnette conveyed "a strip of land thirty-five (35) feet in width" to James E. Murphy, Mr. Corliss's predecessor in title. *Id.* ¶ 4; Snow Aff. ¶ 10 & Ex. 1 attached thereto. Mr. Eponnette retained ownership of the property now owned by the Snows. Pls.' S.M.F. ¶¶ 5-6. Through a series of conveyances thereafter, the Snows and Mr. Corliss ultimately acquired title to their respective properties. Below is a summary of the respective chains of title associated with the Snows' property and Mr. Corliss's 35-foot-wide parcel:

| 35-Foot-Wide Parcel | The Snows' Property |
|---|---|
| 1949: Kenneth Esponnette to James E. Murphy | 1957: Estate of Kenneth Esponnette to George E. Snow and Louise S. Snow |
| 1975: James E. Murphy to John Henry Murphy | 1986: George E. Snow and Louise S. Snow to Gregory and Arlene Snow |
| 2018: John Henry Murphy to Mr. Corliss | |

At some point prior to Mr. Esponnette's conveyance to George and Louise Snow (Plaintiff Gregory Snow's parents), Mr. Esponnette used what is now the Snows' property for commercial purposes, such as removing construction material and as a market garden. Pls.' S.M.F. ¶¶ 5, 35. After purchasing the property from Mr. Esponnette in 1957, George and Louise Snow used the property as a family homestead and for commercial purposes. *Id.* ¶ 8. Aerial photographs, however, reveal that the fields on the western side of the Snows' property—to

which the Road provides access—were not maintained and were allowed to return to forest after the early 1970s. Def.'s Opp. S.M.F. ¶ 42.

Plaintiff Gregory Snow, who received title to his family property in 1986, lived on the lot until 1987—first residing in the Snow family homestead and later residing in a mobile home that was placed on site. Pls.' S.M.F. ¶¶ 9, 10, 12. After 1987, the Snows rented their property and mobile home to various tenants. *Id.* ¶ 13. In 2014, the Snows' property shifted from a rental property back to family use, with the Snows' daughter, Abby, and son-in-law moving to the property. *Id.* ¶¶ 14-15. Abby and her husband have continued to reside on the property to this day in a house near the entrance of the Road and approximately 300 feet from Route 27. *Id.* ¶ 15; Def.'s Opp. S.M.F. ¶ 7. From 1957 to present, the Snow family, as well as their friends, guests, tenants, and invitees, have visibly and openly used various portions of the Road for residential and recreational purposes and to enter their property at various access points. Pls.' S.M.F. ¶¶ 16-17, 30, 34.

John Murphy, Mr. Corliss's predecessor in title, acquired title to the 35-foot-wide strip of land from his father in 1975. *Id.* ¶ 19. John Murphy was aware that the Snows used approximately 25 feet of the Road to access the Snow residence from Route 27, though Mr. Murphy never gave them permission to do so. *Id.* ¶¶ 22-23, 25; Pls.' Ex. C at 43. Although John Murphy left Maine in 1965, he visited the property every few years from 1965 until an indeterminate year in the "[19]90's." Pls.' S.M.F. ¶ 21. Whenever he visited, he would place chains to prevent access to the Road; the chains, however, were always removed. *Id.* ¶ 24.

Shortly after Mr. Corliss acquired his property in 2018, he erected a barricade, including two chains and a gate, and installed rocks to prevent the Snows from using the Road. *Id.* ¶¶ 19,

40. The Snows commenced this action after Mr. Corliss refused to remove the obstructions. *Id.* ¶¶ 43, 45.

Count I of the Complaint seeks, *inter alia*, a declaration that the Snows have an implied quasi-easement for driving and walking over the Road for all residential purposes and other uses consistent with the Snows' and their predecessors' past uses. In Count II, the Snows seek a declaration that they have acquired a prescriptive easement for driving and walking over the Road to access their property for all residential purposes. Count III alleges Nuisance based on a theory that Mr. Corliss damaged a culvert, which caused ground water to back up and infiltrate the Snows' well. Mr. Corliss has counterclaimed, asserting claims of Trespass and IIED against the Snows. The Snows thereafter moved for summary judgment on all counts of the Complaint and Counterclaim.

## STANDARD OF REVIEW

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence indicates no genuine issue of material fact that is in dispute, and, accordingly, the moving party is entitled to judgment as a matter of law." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). "A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Angell v. Hallee*, 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).

"In addition to the specific facts set forth by the parties, [the court] will consider any reasonable inferences that a fact-finder could draw from the given facts." *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18. Although the court will not speculate, it "accord[s] the nonmoving

party the full benefit of all favorable inferences that may be drawn from the facts presented." *Id.* (quotation marks omitted). "When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered." *Id.*

## DISCUSSION

### I. Implied Quasi-Easement (Count I of the Complaint)

First, the Snows seek summary judgment on their Implied Quasi-Easement claim set forth in Count I of the Complaint. The Law Court has recognized two types of implied easements: implied easements by necessity and implied easements created by, or arising from, a prior quasi-easement. *Northland Realty, LLC v. Crawford*, 2008 ME 92, ¶ 12, 953 A.2d 359. The latter type of easement—which is at issue here—"depends on both a preexisting use of the land and the intent of the grantor at the time of conveyance." *Id.* ¶ 13. To establish the existence of an implied quasi-easement at the summary judgment stage, there must be no genuine issue of material fact with respect to the following elements:

> (1) the property when in single ownership [was] openly used in a manner constituting a "quasi-easement," as existing conditions on the [conveyed] land that are apparent and observable and the retention of which would clearly benefit the land [retained]; (2) the common grantor, who severed unity of title, ... manifested an intent that the quasi-easement should continue as a true easement, to burden the [conveyed] land and to benefit the [retained] land; and (3) the owners of the [retained] property ... continued to use what had been a quasi-easement as a true easement.

*Connolly v. Maine Cent. R. Co.*, 2009 ME 43, ¶ 8, 969 A.2d 919 (alterations in original) (quotation marks omitted).

Here, the Snows have failed to meet their burden on the second element. The summary judgment record does not allow the Court to conclude that when Mr. Esponnette conveyed the

35-foot-wide strip of land to James Murphy in 1949, Mr. Esponnette intended to retain an easement over the 35-foot-wide parcel for the benefit of the property he continued to hold.

There is no deed language indicative of such an intent. *See* Pls.' S.M.F. ¶ 4; Snow Aff. ¶ 10 & Ex. 1 attached thereto. To the contrary, the Esponnette-to-Murphy deed indicated that the conveyance of the 35-foot parcel was "free of all encumbrances." *Id.*; *see also Northland Realty*, 2008 ME 92, ¶ 15, 953 A.2d 359 (finding "no evidence . . . of the grantor's intent to retain a quasi-easement as a true easement" where the "conveyance expressly covenanted that the [property] was 'free of all encumbrances'").

The only other evidence in the record that is arguably indicative of Mr. Esponnette's intent—including (1) evidence that Mr. Esponnette used what is now the Snows' property for commercial purposes and (2) evidence that the Snows' predecessors used the 35-foot parcel to access their property some eight or more years after the Esponnette-Murphy conveyance—does not compel an inference that Mr. Esponnette intended to retain an easement over the 35-foot-wide parcel. *See Curtis*, 2001 ME 158, ¶ 9, 784 A.2d 18 ("When . . . reasonable inferences are in dispute on a material point, summary judgment may not be entered."). Accordingly, the Court declines to enter summary judgment on the Snows' Implied Quasi-Easement claim.

## II. Prescriptive Easement (Count II of the Complaint)

The Court likewise declines to enter summary judgment on the Snows' Prescriptive Easement claim. Acquisition of an easement by prescription requires proof of "continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed." *Dowley v. Morency*, 1999 ME 137, ¶ 23, 737 A.2d 1061. "Acquiescence by the owner to the use is essential, and in this regard, the acquisition of an

easement by prescription differs from the acquisition of title by adverse possession." *Id.* Acquiescence implies "passive assent or submission to the use, as distinguished from the granting of a license or permission given with the intention that the licensee's use may continue only as long as the owner continues to consent to it." *Id.* (quotation marks omitted).

"[A] prescriptive easement may [] be interrupted by proof of nonacquiescence." *Id.* For instance, the Law Court has held that a property owner's placement of a barrier, such as a chain-link fence, constitutes an indication of nonacquiescence sufficient interrupt a prescriptive easement claim. *Cedar Beach/Cedar Island Supporters, Inc. v. Gables Real Estate LLC*, 2016 ME 114, ¶¶ 22-25, 145 A.3d 1024.[1]

In this case, the summary judgment record contains evidence of nonacquiescence sufficient to defeat the Snows' summary judgment motion. The record reveals that from 1965 until an indeterminate year in the 1990s, John Murphy, then-owner of the Road, visited his property every few years and attempted to prevent access to the Road by placing a chain across it. Pls.' S.M.F. ¶¶ 21, 24. Though the chains were always removed, Mr. Murphy would replace the chains each time he was in Maine until he stopped visiting the property in the 1990s—

---

[1] Although *Cedar Beach* addressed a *public* prescriptive easement, a party seeking to establish such an easement must prove—as with a private prescriptive easement—that the use was "with the owner's knowledge and acquiescence" or "so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed." 2016 ME 114, ¶ 11, 145 A.3d 1024 (quotation marks omitted). And while there are some differences between the private and public prescriptive easement standards, these differences primarily relate to the "adversity" element, not the "acquiescence" element. *Id.* ¶ 14 ("In the case of a private prescriptive easement, adversity is presumed if the claimant shows that he has used the property continuously for twenty years and the owner has acquiesced. . . . However, when a party is claiming the existence of a public prescriptive easement, the party must prove adversity because the public recreational use of private uncultivated lands is presumed to be permissive."). Accordingly, the Court finds *Cedar Beach*'s discussion of acquiescence/nonacquiescence instructive.

perhaps as late as 1999.[2] Pls.' S.M.F. ¶ 21; Pls.' Ex. C at 23, 25, 53-54. Mr. Murphy did not visit the property in the new millennium, but shortly after Mr. Corliss acquired the 35-foot-wide strip of land in 2018, Mr. Corliss placed a barrier across the Road to block access. Pls.' S.M.F. ¶¶ 19, 40.

While the removal of the chains may be considered an act of adversity, "the placement of [the chains] conversely constitute[d] an indication of nonacquiescence." *Cedar Beach*, 2016 ME 114, ¶ 24, 145 A.3d 1024. The chains and other barriers placed by Mr. Murphy and Mr. Corliss, even if they were removed after only a few days, sufficiently interrupted any prescriptive period. *See id.* The summary judgment record does not establish, without dispute as to material fact, that the Snows and their predecessors adversely used the Road for a 20-year period that was uninterrupted by these acts of nonacquiescence. Accordingly, summary judgment must be denied with respect to the Snows' Prescriptive Easement claim.

### III. Nuisance (Count III of the Complaint)

The Snows ask the Court to enter summary judgment on their claim of Nuisance, which alleges that Mr. Corliss damaged a culvert and caused ground water to back up and infiltrate their well. To prevail on a claim of Nuisance, the Snows must prove, among other elements, that Mr. Corliss "acted with the intent of interfering with the use and enjoyment of the land." *West v. Jewett & Noonan Transp., Inc.*, 2018 ME 98, ¶ 14, 189 A.3d 277.

Here, the affidavits submitted by Mr. Corliss generate a genuine issue of material fact as to whether the defendant, when causing damage to the culvert, acted with the intent of interfering

---

[2] The summary judgment record is unclear as to the exact year in the 1990s that Mr. Murphy stopped visiting Maine and replacing the chains. In the face of such an ambiguity, the Court will "accord [Mr. Corliss] the full benefit of all favorable inferences that may be drawn from the facts presented." *Curtis*, 2001 ME 158, ¶ 9, 784 A.2d 18 (quotation marks omitted).

with the Snows' use and enjoyment of their land. *See* Corliss Aff. ¶ 14; Coutts[3] Aff. ¶¶ 2-3, 5-6 (suggesting that any interference with the culvert was done inadvertently and as part of Mr. Corliss's efforts to prevent the Road from eroding and that Mr. Corliss engaged a contractor to perform a proper repair). Summary judgment therefore cannot be entered on the Snows' Nuisance claim.

## IV. Trespass (Mr. Corliss's Counterclaim)

Because genuine issues of material fact exist as to whether the Snows enjoy easement rights over the Road owned by Mr. Corliss, the Snows are not entitled to summary judgment on the claim of Trespass set forth in the Counterclaim. *See supra* §§ I-II.

## V. IIED (Mr. Corliss's Counterclaim)

Finally, the Snows seek summary judgement on Mr. Corliss's claim of IIED, which requires proof of the following elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18 (quotation marks omitted) (alteration omitted).

Specifically, the Snows argue that Mr. Corliss's claim fails on the fourth element, noting that it is undisputed that the only symptoms Mr. Corliss has suffered are sleeplessness and anxiety for which he has not received a diagnosis. *See* Pls.' S.M.F. ¶ 47. The Snows furthermore

---

[3] In responding to Paragraph 41 of the Snows' Statement of Material Facts, Mr. Corliss cites to the Affidavit of Gary Choate. It appears, however, that Mr. Corliss intended to cite to the Affidavit of Dan Coutts, as the Coutts Affidavit addresses the subject of the culvert. The Court therefore understands Mr. Corliss's citation to the Choate affidavit to be a mistake.

point out that it is undisputed that Mr. Corliss never sought treatment for his anxiety or sleeplessness from a medical professional. *Id.* ¶ 48.

Mr. Corliss responds with his own affidavit, which reaffirms that he has continued to suffer anxiety and sleeplessness and also states that "[t]he situation has caused conflict with my wife and we experience anxiety that interferes with our ability to function normally." Def.'s Opp. S.M.F. ¶ 31; Corliss. Aff. ¶ 13. The Court must therefore decide whether Mr. Corliss has established a prima facie case with respect to IIED's fourth element. *See Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18; *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 9, 742 A.2d 933.

The Law Court has explained that "[i]t is for the court to determine whether on the evidence severe emotional distress can be found," and "it is for the jury to determine whether, on the evidence, it has in fact existed." *Bratton v. McDonough*, 2014 ME 64, ¶ 24, 91 A.3d 1050 (quoting Restatement (Second) of Torts § 46 cmt. j (1965)); *see also Argereow v. Weisberg*, 2018 ME 140, ¶¶ 29-30, 195 A.3d 1210. The fourth element imposes an objective standard of proof. *Lyman v. Huber*, 2010 ME 139, ¶ 21, 10 A.3d 707. The Law Court has described the legal standard used to assess the "severity" requirement as follows:

> [W]hen . . . the existence of the fourth element cannot be inferred from the extreme and outrageous nature of the defendant's conduct alone, a plaintiff must prove that that her emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm. [The Law Court] [has] not preclude[d] the possibility that this can be achieved without the corroborating testimony of an expert medical or psychological witness. That possibility is, however, remote. In most instances, proof of objective symptoms will require expert testimony to establish that the plaintiff's emotional injury qualifies for a diagnosis such as shock, post-traumatic stress disorder, or some other recognized medical or psychological disease or disorder. . . . This standard prevents recovery for emotional injuries that are anything less than severe.

*Id.* ¶ 23.

"Emotional distress that is 'severe' is that which is 'extremely intense.'" *Id.* ¶ 21. It must be so intense that "no reasonable person could be expected to endure it." *Id.* (quotation marks omitted). "Stress, humiliation, loss of sleep, and anxiety occasioned by the events of every day life are endurable." *Schelling v. Lindell*, 2008 ME 59, ¶ 26, 942 A.2d 1226.

Here, the Court concludes that severe emotional distress cannot be inferred from the Snows' conduct, which includes heated arguments with Mr. Corliss over the parties' respective property rights, videotaping members of Mr. Corliss's family, and driving slowly and repeatedly by Mr. Corliss's home. *See Lyman,* 2010 ME 139, ¶¶ 19, 24-26, 10 A.3d 707 (concluding that the fourth element was not established notwithstanding evidence of the defendant's tirades, hurtful comments, and efforts to control [the plaintiff]'s activities and to limit her contact with others). Accordingly, Mr. Corliss must prove that that his "emotional distress was so severe as to have manifested objective symptoms demonstrating shock, illness, or other bodily harm." *Id.* ¶ 23. He has failed to do so in this case.

Mr. Corliss's symptoms—which consist of anxiety, loss of sleep, and resultant marital problems—do not permit a finding of severe emotional distress. *See Schelling,* 2008 ME 59, ¶ 26, 942 A.2d 1226 ("Stress, humiliation, loss of sleep, and anxiety occasioned by the events of every day life are endurable," and not actionable); *Argereow v. Weisberg,* 2018 ME 140, ¶¶ 29-30, 195 A.3d 1210 ("[the plaintiff's] allegations do not place her emotional distress, which takes the form of lost wages and a strained marriage that led to counseling, at a level where it could be characterized as 'so severe that no reasonable person could be expected to endure it'"). Moreover, even though Mr. Corliss vaguely asserts that his anxiety has interfered with his ability to function normally, there is no evidence that he has failed to meet the demands of everyday

living. *Lyman*, 2010 ME 139, ¶ 24, 10 A.3d 707. Nor did Mr. Corliss seek treatment from a medical or mental health professional. *Id.*; Pls.' S.M.F. ¶ 48.

Thus, the Court concludes that Mr. Corliss's symptoms, as a matter of law, are not substantial enough to qualify as emotional distress "so severe that no reasonable person could be expected to endure it." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18; *see also Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 26, 48 A.3d 774.

## CONCLUSION

The entry is: The Snows' Motion for Summary Judgment is DENIED as to Counts I-III of the Complaint and as to the claim of Trespass set forth in Mr. Corliss's Counterclaim. The Motion is GRANTED as to the IIED claim set forth in the Counterclaim.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R. Civ. P. 79(a).

Dated:     5/14/24

Michaela Murphy
Justice, Maine Superior Court

5/24/24: Entered on the docket.